ELIZABETH HOLDERMAN v. CALVIN HOOD *et al.*

No. 13,064.   ( 78 Pac. 838.)

SYLLABUS BY THE COURT.

1. TRUSTS AND TRUSTEES—*Suit to Enjoin Sale of Trust Property —
   Beneficiary Not Bound.* In an equity suit brought by a bene-
   ficiary under an express trust in writing against the trustee, to
   enjoin a sale of lands held by the latter for conversion into
   money to pay debts, the bill alleged that it was filed "on behalf
   of complainant and all other creditors likewise situated who de-
   sire to avail themselves thereof." *Held,* that a final decree in
   the suit did not affect the rights of a beneficiary in the trust,
   although in like situation as complainant, who was without no-
   tice or knowledge of its pendency.

2. ——— *Trustee Liable in Damages for Fraudulent Conspiracy.*
   An action in tort for damages may be maintained against a
   trustee who fraudulently conspired with other persons to make
   a sale of the trust property in his hands at less than its value
   and did so sell it to the injury of a beneficiary in the trust. The
   parties advising, assisting and aiding the trustee to carry out his
   wrongful purposes are also liable to plaintiff in the same action.

3. ——— *Construction of Trust—Presumption of Fact.* A sim-
   ple trust to sell real estate and pay debts will be presumed not
   to be open after a period of fourteen months from the time the
   property was converted into money and part of it shown to have
   been paid out; especially so, when the terms of the trust re-
   quired the trustee to sell and convert the property into money
   "as speedily as may be without the unnecessary sacrifice of
   the same" and to pay dividends as "speedily as possible."

Error from Lyon district court; DENNIS MADDEN,
judge.   Opinion filed December 1, 1904.   Reversed.

STATEMENT.

THIS was an action sounding in tort, brought in
May, 1901, by Elizabeth Holderman, plaintiff below,
against Calvin Hood, George W. Newman, Isaac E.
Lambert, R. T. Battey, W. Martindale, and the Ex-
celsior Mill Company, defendants below.   Hood, New-

man, Lambert and Battey demurred to the amended petition on two grounds, viz.: (1) That it did not state facts sufficient to constitute a cause of action; (2) that the several causes of action were improperly joined. The demurrer was sustained, and, plaintiff below electing to stand on her petition, judgment was entered against her for costs. The sole question is whether the demurrer was sustained rightfully. The petition with its exhibits is very long. We will state the substance of it.

It is alleged that in 1898 the Excelsior Mill Company and W. Martindale were indebted to plaintiff on a promissory note to the amount of $3104.89. She obtained judgment against them on November 4, 1899, for the amount, the same to draw seven per cent. interest. On March 20, 1900, there was paid on the judgment, by R. T. Battey, trustee, the sum of $577.79, out of the sale of Martindale's property, which is all that plaintiff ever received out of the proceeds of property turned over by Martindale to said trustee. The payment was received by plaintiff without knowledge on her part of the suit of Ford Harvey against R. T. Battey, hereafter referred to, and in ignorance of the fraudulent conspiracy and wrongful acts of Hood, Battey, Newman, and Lambert, set forth hereinafter. She learned of the wrongs complained of within sixty days before the petition was filed. On May 1, 1901, there was paid on her judgment, by the trustee in bankruptcy of the Excelsior Mill Company, the sum of $748.45, leaving a balance of $2089.01 still due. The mill company and Martindale were both insolvent. Martindale, being heavily involved financially, and indebted to the amount of about $165,000, and desiring to secure its payment,

entered into a written agreement with the creditors mentioned in the stipulation as follows:

"THIS STIPULATION AND AGREEMENT, Made and entered into by and between William Martindale, party of the first part, and Morton Albaugh, receiver of the First National Bank of Emporia, Kansas, Ford Harvey, First National Bank of New York, Fourth National Bank of St. Louis, Eureka Bank, of Eureka, Kansas, Miss Lizzie Holderman, Mrs. H. M. G. Holderman, Osage County Bank, of Osage City, Kansas, Madison Bank, of Madison, Kansas, and Union National Bank of Kansas City, Missouri, and Central National Bank of Topeka, Kansas, creditors of said William Martindale, parties of the second part:

"WITNESSETH, In order to save unnecessary litigation, sacrifice of property, and expenses, said William Martindale will transfer and convey to a trustee to be selected and named by Honorable W. C. Hook, judge of the United States district court for the district of Kansas, all of his property, except that exempt by law from execution and forced sale under legal process, *in trust*, to be sold and converted into money by said trustee as speedily as may be without the unnecessary sacrifice of the same, the proceeds thereof to be applied as follows, after the payment of the necessary costs and expenses of executing the trust:

"(1) To the payment in full of all the just and lawful debts of said William Martindale.

"(2) If such proceeds are insufficient to pay such debts in full, then to the payment of such debts *pro rata* and in equal ratable proportion, without preference. And said parties of the second part consent to the creation of said trust and accept the same.

"In case of the death, resignation or other disability of the trustee, before the completion of the execution of the trust, the said Honorable W. C. Hook, judge of the United States district court, or his successor, shall appoint a trustee to succeed him. Such collateral securities, or liens, upon the bank-stock or other property as any of the creditors held on Novem-

ber 16, 1898, and still hold, are not to be disturbed, waived or in any way affected by this stipulation.

"After the application of the proceeds of said property to the purposes named herein, and the payment of said debts in full, whatever is left of said proceeds, and of said property, shall be conveyed by said trustee to said William Martindale.

"Dividends are to be paid by the trustee on the claims of the creditors as speedily and as often as the proceeds will permit.

"The creditors shall, within sixty days, unless further time be granted by the trustee, present their claims and demands against William Martindale to the trustee, who shall file and allow the same upon ordinary proof by affidavit, or oral proof, if not controverted.

"William Martindale, or any of his creditors, shall have the right to controvert any such claim, and if controverted the same shall be determined by the judgment of a competent court, in the usual and ordinary course of legal proceedings.

"In TESTIMONY WHEREOF, the parties hereto set their hands and seals, this 7th day of June, A. D. 1899."

(Signed by all the parties named in the first clause.)

On June 29, 1899, Judge Hook did select, designate and appoint defendant R. T. Battey as the trustee provided for in said agreement, requiring that he enter into bond for the faithful performance of his duties in the sum of $50,000. The order of appointment reserved the right to Judge Hook to substitute another trustee in Battey's stead in case of the latter's death, resignation, or any other cause deemed sufficient to authorize such substitution. The trustee qualified and entered into the discharge of his duties, but never made a report to any court, or to plaintiff, or to the creditors of Martindale.

In pursuance of said agreement, Martindale and

wife duly transferred to Battey, as trustee, all of the former's non-exempt property, both real and personal. The lands in Greenwood county consisted of 7127½ acres (described), and were of the actual value of $107,000; also lots in Madison, in said county, with their improvements, valued at $5000; land in Lyon county valued at $3200; lots in Emporia valued at $400; land in Chase county valued at $5600; land and lots in Barton and Edwards counties worth $10,-500; lands in Bent county, Colorado, and lots in Cascade, Colo., of the value of $4800; also an interest in certain lots in Parsons, Kan., valued at $1000; personal personal worth $4000, consisting of stock in several corporations—the real estate being of the actual value of $137,500, and the personalty $4000; in all, $141,500.

The First National Bank of Emporia was a creditor of Martindale to the amount of $110,000. Its affairs were in the hands of Morton Albaugh, as receiver. Isaac E. Lambert and the law firm in which he was a partner were, during all the time covered by the transactions set out, the attorneys for Albaugh, getting a large compensation therefor, to wit, $3000 per annum. Lambert and his law firm were also attorneys for R. T. Battey, as trustee, charging the latter compensation therefor. As such attorney, it was the duty of Lambert to aid and assist the trustee in the honest discharge of his duties in effecting a sale of the property mentioned for as large a sum as possible, to persons who would pay the highest price. It was also his duty not to accept employment from any prospective bidder, or represent such bidder, or do anything which would prevent the fullest competition in bidding. Defendant Battey was also under obligations to administer his trust honestly, and sell the

property in his hands for the highest price, and not show partiality to any bidder. Defendants Lambert and Battey, in violation of their duty, illegally confederated and conspired together with defendants Hood and Newman, with the object and intent that the latter might purchase all said property from the trustee for a grossly inadequate sum, much less than its actual value, and much less than could have been obtained had an honest effort been made to sell it. In furtherance of the plan, the four defendants named proceeded as follows : About November 23, 1899, Battey caused to be published in the Emporia *Gazette* and other newspapers the following notice :

"The real estate of William Martindale, as conveyed to me for his creditors, is hereby offered for sale for the highest and best price offered. Bids will be received by me for this property as a whole up to and including December 23, 1899. Those who desire to purchase may see description at office of the receiver of the First National Bank, Emporia, Kansas, or of the undersigned, at Florence, Kan. Bids must be accompanied with certified check for five per cent. of bid."

The notice provided for a sale in bulk, with no "upset" or minimum price fixed. The real estate was situated in different counties of Kansas and Colorado. A better price could be had by selling it in separate parcels, and by disposing of the personalty apart from the real estate. The trustee notified persons desirous of bidding that no bids would be received after December 23, 1899 ; that he would take until January 1, 1900, to determine what should be done, and if the best bid should be satisfactory to him the land would be sold ; otherwise, he would take a different course to dispose of the property. The trustee failed and refused to furnish abstracts

until December 15, 1899, and then allowed prospective bidders three days only to examine them, although there were twenty-seven abstracts in number. That time was too short to enable purchasers to know whether the titles were good in the event they bought the property, and the abstracts were incomplete, defective, and not to be relied on. No abstracts were furnished to 682½ acres of land in Greenwood county and 400 acres in Lyon county, and none to any of the lots; two of the abstracts were not certified; and those relating to the land in Barton, Chase and Edwards counties, Kansas, and in Colorado, were certified, some down to 1879, and the latest down to 1890. The abstracts were not brought down to date through the neglect and design on the part of Lambert and Battey, with the intent to deter persons from bidding.

Notwithstanding the facts above stated, several persons financially able to purchase made an offer, and stood ready to bid on the land; among others, C. K. Wells, P. E. Hull, P. A. Landergin, and Ford Harvey, and each was prepared to bid and pay therefor a sum exceeding $50,000 in cash.

Believing that the trustee would not faithfully execute his trust, and that he was endeavoring to sell the property at a grossly inadequate price to defendant Calvin Hood, in accordance with the unlawful conspiracy above set out, Ford Harvey, being a creditor of Martindale, brought a suit against R. T. Battey in the circuit court of the United States for the district of Kansas, in which he sought to enjoin Battey from making the sale in accordance with the notice above mentioned, setting out in his bill of complaint the stipulation between Martindale and his creditors, the appointment of Battey as trustee under it, the conveyance by Martindale of his property to the trustee, and

18—70 KAN.

alleging an indebtedness from Martindale to him of $10,000 ; that the notice of sale of the property was on such terms as would prevent a fair price being paid for the property ; that to protect his claim he desired to bid, and sought information from the trustee ; that he was assured by Battey on December 15, 1899, that he would furnish abstracts to the real estate ; that Battey did furnish abstracts to all the lands except about 1000 acres, but only allowed the complainant three days in which to examine them, there being twenty-seven of them. The other allegations with reference to the abstracts and the refusal of the trustee to fix a minimum price were substantially like the allegations in the present petition. It was further averred :

"If a sale be permitted to be conducted in the manner contemplated by the trustee, the property in question will not bring any fair price, and will bring much less than at a fair, public, open sale conducted under decree of this court ; and if a sale is permitted to be conducted in the manner contemplated by the trustee, he can turn it over to whomsoever he will, and he has already been carrying on negotiations with a personal friend who is anxious and desirous of acquiring the property at the lowest price possible, and the trustee has absolutely refused to fix an upset price ; he has refused to receive sealed bids to be opened and passed upon in public at the same time, or to auction off the property to the highest and best bidder ; he has no power to regulate the portion of the bid which creditors may pay in claims, and insists that all creditors who shall bid shall, like outsiders, pay in cash, and this prevents the creditors from attempting to form any kind of a reorganization committee by which they may merge their claims in one person and acquire the property at a fair price, or else see that the reasonable market value thereof is brought."

In furtherance of said conspiracy, defendants Hood,

Lambert and Battey prevailed upon the receiver of said First National Bank of Emporia, the attorney of the Fourth National Bank of St. Louis, and the First National Bank of New York (they being creditors of said William Martindale), each voluntarily to appear and become defendants in said suit of Harvey against Battey; and said Albaugh, as receiver, by said defendant Lambert, as attorney for him, voluntarily appeared in the suit and made the receiver a defendant therein; all of which was done after the purchase of said claim of Harvey, for the purpose and with the intention of making it appear that all the principal and heavier creditors of Martindale were interested in the suit and would be satisfied that Albaugh, receiver, be made defendant therein.   On December 30, 1899, a stipulation was entered into in said suit (pending in the United States circuit court) which read as follows:

"It is agreed between the parties above named and Morton Albaugh, receiver of the First National Bank of Emporia, Kansas, the Fourth National Bank of St. Louis, and the First National Bank of New York, as follows:

"(1) The real estate mentioned in the bill in this case shall be sold under the order and direction of this court.

"(2) Morton Albaugh, receiver as aforesaid, the Fourth National Bank of St. Louis and the First National Bank of New York may be made defendants in the above-entitled cause.

"(3) Each party to this stipulation shall ascertain the best price that can be obtained for the real estate mentioned in the bill and report the same to the court on or before January 8, 1900, at which time the court, in its discretion, may make an order finally disposing of the case, if it approves any of the offers at that time submitted."

(Signed by Harvey and the other parties named in the first clause of the stipulation.)

A restraining order was issued in the Ford Harvey suit against Battey on December 21, 1899, and a subpœna and copy of the order served on the latter.

The petition in the case at bar alleges that Battey and Lambert made no effort to have said restraining order set aside. Battey professed that, in obedience to the order, he was not able to receive bids or take any steps toward the sale of the property until after the order should be set aside, when, he promised, another notice would be given to bidders and ample time afforded them. Lambert, in violation of his duties, in order to carry out the conspiracy, went to Kansas City about December 30, 1899, on behalf of his codefendants, Hood and Newman, and purchased and obtained an assignment of the claim of Ford Harvey against Martindale, and in the negotiations he stipulated that the fact of the purchase and assignment should not be made public, and should not be disclosed to the United States court or the judge thereof; that a decree should be had and entered in said suit of Harvey against Battey, the same as if there had been no assignment.

Afterward, on January 8, 1900, the parties in the suit of Harvey against Battey signed and filed the following stipulation:

"Now come Ford Harvey, complainant, R. T. Battey, defendant, the Fourth National Bank of St. Louis, the First National Bank of New York, and Morton Albaugh, receiver of the First National Bank of Emporia, Kansas, and report to the court that the best offer they can get for the real estate mentioned in the bill is one obtained by R. T. Battey, trustee, from Calvin Hood, who offers to pay therefor the sum of forty-one thousand dollars ($41,000), and, pursuant to the written stipulation heretofore signed, all parties ask that the court accept the same and make some decree finally disposing of this case."

In accordance with the above report a decree was entered in the suit on the same day, as follows : .

"This cause coming on for final hearing upon the stipulation heretofore signed and report made, the parties appearing by their respective counsel, it is ordered, adjudged, and decreed :

"(1) Morton Albaugh, receiver of the First Na-' tional Bank of Emporia, Kansas, the Fourth National Bank of St. Louis, and the First National Bank of New York, are hereby made parties defendant to this cause.

"(2) The restraining order heretofore issued herein is by consent dissolved, defendants waiving all claims for damages on the injunction bond.

"(3) All parties consenting thereto, it is hereby ordered and directed that the report made by the parties of an offer of purchase for the real estate mentioned in the bill, which has been made to R. T. Batter, trustee, be and the same is hereby approved, and the trustee is hereby directed to sell said real estate for not less than forty-one thousand dollars ($41,000) cash ; and, after paying therefrom the costs and expenses of this litigation, including complainant's counsel fee, the same shall be disposed of by the trustee under the trust heretofore created by agreement of the parties and freed from any further order or direction of this court.

(Signed)       JOHN F. PHILLIPS, *Judge.*"
"Dated January 8, 1900.

The petition further alleges that the judge of said United States court did not know, and he was purposely kept in ignorance, of the sale and transfer of the Harvey claim to Hood and Newman ; that it was a violation of duty on the part of Lambert and Battey to provide that the sum of $500 should be paid to counsel for Ford Harvey out of the trust funds in Battey's hands, which should have gone to pay Martindale's debts.   Lambert and Battey, to carry out the unlawful conspiracy, failed to make report to the

United States circuit court before January 8, 1900, of the best price that could be obtained for said lands, but, on the contrary, discouraged persons who wanted to bid therefor, and withheld information, and falsely stated that no bids could be received and nothing done until January 8, 1900. It is further alleged that the creditors of Martindale, and other persons desiring to bid on and buy the lands, applied to defendants Battey and Lambert between December 22, 1899, and January 8, 1900, for information whether bids would be received and when the sale would be made, and said parties withheld any information, and promised each inquirer that they would notify him when Battey would be able to receive bids; but they failed to do so, and carried forward secretly their plan to sell the property at less than its true value; that a much greater price could have been had for the property, and a much larger price had been offered to Battey for it; that Wells, Hull, and Landergin, with others, desired to buy and stood ready to pay a much larger sum than $41,000, and each of their bids was for more than $50,000. The property was worth $141,500, which sum could have been obtained if Lambert and Battey had honestly and faithfully discharged their duty and made honest efforts to obtain the full value of it. The sale was confirmed on January 8, 1900. A deed was executed by Battey, as trustee, to Hood and Newman, which was immediately put on record by them.

In addition to the real estate, Battey, as trustee, without any additional consideration, and to further the objects of the conspiracy, assigned and delivered to Hood and Newman the personal property conveyed by Martindale to him in trust, which was of the value of $4000, although the same was not described, or

Holderman v. Hood.

referred to, in the notice of sale.  Its existence and the intention to include it in the sale were concealed by Battey and Lambert from bidders.

Defendants Hood and Newman have sold and deeded to various *bona fide* purchasers one-half of the real estate, for which reason plaintiff cannot successfully have the deed from Battey to Hood and Newman set aside.  If the property had been sold for $141,500, the trustee would have had sufficient funds in his hands to pay plaintiff's claim, and to pay all of Martindale's debts, but by reason of the fraudulent acts of defendants, above set out, plaintiff has been paid the sum of $577.79 only, and there is still due her $2089.  The petition concludes:

"By reason of the premises, said defendants, Calvin Hood, Geo. W. Newman, Isaac E. Lambert, and R. T. Battey, have damaged this plaintiff and become liable to her in the sum of $3000.

"Wherefore, this plaintiff, Elizabeth Holderman, asks judgment against each and all of said defendants for the sum of $3000 and the costs of this suit."

*A. L. Redden*, for plaintiff in error.

*Kellogg & Madden*, and *Gleed, Ware & Gleed*, for defendants in error.

The opinion of the court was delivered by

SMITH, J.:  The claim that the rights of plaintiff below, Elizabeth Holderman, were concluded by the decree entered in the United States circuit court in the suit of Ford Harvey against R. T. Battey cannot be sustained.  The general rule that strangers to a suit are not bound by the decree therein is not combated by counsel for defendants in error.  They insist, however, that she was a party by representation; that when Morton

1. Beneficiary not bound by the final decree.

Albaugh, receiver, and two other creditors interested in the trust came into the suit and were made defendants she became privy to the proceeding through them, and through her trustee, who was a party in the first instance. Much stress is laid on the allegation in the bill filed by Ford Harvey against Battey in the federal court, in which he stated:

"This bill is filed on behalf of complainant and all other creditors likewise situated who desire to avail themselves thereof."

It must be remembered that a final decree in the equity suit was entered on January 8, 1900. On May 25, 1901, the present action was instituted. The petition avers that on March 20, 1900, when the trustee paid plaintiff $577.79 out of the proceeds of Martindale's property, sold by him, she did not know of the suit of Ford Harvey against R. T. Battey, or of the fraudulent conspiracy of defendants; that she learned of the same within sixty days before this action was begun.

After an exhaustive discussion of the effect of decrees and judgments on parties not actually before the court but represented by others, Pomeroy, in his work on Remedies and Remedial Rights, second edition, section 400, sums up the result of his investigation as follows:

"If, however, the prior suit has been terminated, and the question arises in a subsequent controversy, and involves the conclusive effect of the former adjudication upon the class of persons represented by the actual parties, in order that such judgment should be conclusive upon any particular person of the class, either in his favor or against him, there must have been the previous formal act on his part of applying to the court, and an order thereon making him a party to the action, so that his name should have ap-

Holderman v. Hood.

peared in some manner upon the record; or it must be shown that he had notice of the proceedings, and an opportunity to unite in them, of which he neglected or refused to avail himself. These views and conclusions reconcile the decisions which at first sight appear to be conflicting, and they present a practical and harmonious rule of procedure.''

Elizabeth Holderman was so far before the court in the case of Harvey against Battey that if she had neglected, after reasonable notice, to appear and establish her claim, or make demand for other desired relief, her rights might have been concluded in a subsequent action. (*Stevens v. Brooks*, 22 Wis. 695.) Not being a party to the suit, and wholly ignorant of its pendency and final disposition, it would be an unwarranted and unjust extension of the rule to say that she was represented in any way, or that her rights in this action were affected in any degree.

It is argued that the petition does not contain allegations sufficiently specific to show that there was fraud in obtaining the decree of the federal court; that no charge of bad faith is made to Albaugh and the two banks which came in and were made defendants. The gravamen of the charges is against Battey, Lambert, Hood, and Newman. The conspiracy originated with them, and was consummated to the financial profit of the last two, equaling the difference between the actual value of the property, alleged to be $141,500, and the amount they paid for it, to wit, $41,000.

2. Trustee held liable for fraudulent conspiracy.

A reference to the averments of the petition, summarized in the statement, will disclose that Lambert and his associates, desiring to obtain the property in the trustee's hands at a price much below its value, and for much less than it could have been sold to other purchasers, used the case of Harvey against Battey,

Holderman v. Hood.

pending in the circuit court of the United States, as an instrument in furtherance of their wrongful purposes, by concealing the fact that complainant had no interest in the suit when the final decree was entered, having assigned his claim to Hood and Newman, and by deceiving the court into the belief that Hood's bid of $41,000 was the highest obtainable. It appears directly from the allegations of the petition that, if buyers had been encouraged to bid on the land by having abstracts furnished to them showing conveyances down to the date the trustee took title, and had been afforded sufficient time for their examination, and if the time when bids were to be received had been publicly known, the property would have sold for a much higher price than Hood paid for it.

The alleged misconduct of Battey is abhorrent to every principle of law governing persons engaged in the administration of a trust, where good faith and scrupulous honesty are always demanded. It was his first duty to use every exertion to sell the trust property for the highest price, and to that end invite bidders to compete with one another, giving them every facility to become acquainted with the title of the real estate in his hands and to afford them ample time and opportunity to bid. This duty he not only neglected, but it is alleged that he corruptly conspired with others that they might reap a profit from the estate in his hands at the expense of the beneficiaries in the trust. Courts would justly forfeit public confidence if they should fail to exercise watchful care over the rights of confiding beneficiaries and neglected to compel unfaithful trustees to make complete reparation to those injuriously affected by their recreant acts.

Again, it is averred that Lambert and the firm of lawyers with which he was connected were attorneys

for Battey, the trustee, and received compensation therefor. This being true, it was their duty, as counsel for the trustee, to serve their client, and through him the *cestuis que trust*, faithfully, to the end that the trust property should bring all it was worth. The petition charges :

"But notwithstanding the duty of said defendant R. T. Battey faithfully and honestly to execute said trust in the manner above set forth, and to sell and dispose of said property for its full value and for the highest and best price that could be obtained for the same, and notwithstanding the duty of said defendant Isaac E. Lambert faithfully and honestly to assist said defendant Battey so to execute and discharge his trust, and to render all assistance possible to effect a sale of said property for its full and actual value and for the highest and best price that could be obtained for the same, and thus enable the creditors of said defendant Martindale, including this plaintiff, to obtain payment of their debts in full ; yet the said defendants R. T. Battey and I. E. Lambert, in violation of their said duty, illegally confederated and conspired with defendants Calvin Hood and Geo. W. Newman for the purpose and object and with the intent that said Calvin Hood and Geo. W. Newman might make a purchase of all of said property from said R. T. Battey, as trustee, for a sum grossly inadequate and much less than its actual value, and for a much less sum and price than could have been obtained for said property if an honest and fair and just offer and effort had been made to sell the same to the highest and best bidder and for the highest and best price that could be obtained therefor ; and to prevent a fair and honest competition for the purchase of said property, and to enable said defendants Hood and Newman to purchase the same at a grossly inadequate price and at a sum much less than its actual value, and much less than it could have been sold for if said defendants Battey and Lambert had faithfully, honestly and intelligently performed and discharged their said respect-

ive duties ; and in order to carry out said conspiracy and unlawful combination, they, the last-named four defendants, did do, perform, take part in and consummate the following actions.''

The specific acts of fraud set out in the statement follow. A tort-feasor is liable to an injured party if he participate in a wrong the effect of which is to damage the former ; the extent of individual participation or of expected benefit is immaterial ; each of several wrong-doers is liable for the entire damage. We are clear that the allegations of a conspiracy to defraud and its consummation are sufficiently specific to constitute a cause of action against defendants.

It is insisted by counsel for defendants in error that the remedy of plaintiff was in equity, to set aside the decree of the federal court in the case of Harvey against Battey, and for an accounting with the trustee, and that this is especially true because

3. Action in tort for damages may be maintained.

the petition herein shows that the trust is still open and in the process of administration. As before stated, plaintiff below was not a party to the equity suit in the federal court, either personally or by representation. She charges that after Harvey assigned his interest as complainant it became a collusive proceeding, wherein the court, kept in ignorance of the fraudulent purpose of the parties, became the innocent instrument of their wrong-doing. We have no doubt that if plaintiff had been a party to the decree, proof of the allegations of the petition in the present case would move the federal court to annul it promptly, if plaintiff should see fit to attack it for fraud. She has sought a remedy at law, however, which is adequate. In section 690, volume 2, of Beach on Trusts and Trustees, it is said :

'' While the *cestui que trust* has a right to follow the

trust property and to hold the possessor as a constructive trustee, wherever he is not a purchaser for a valuable consideration and without notice, yet he is not bound to accept that remedy. He may hold the trustee to a personal liability. Where the trustee has conveyed the property to an innocent purchaser for a valuable consideration, and has thus put it beyond the reach of the *cestui que trust*, his remedy is simply in an action against the trustee. It has been held that the *cestui que trust* may elect to hold original or substituted property, when he can identify the trust fund, either in its original or in a substituted form, or he may hold the trustee personally liable, but if he cannot identify the property, he must rely on the personal liability of the trustee. *Cestui que trust*, when forced to rely upon his trustee's personal liability, occupies a position toward the estate of the trustee which is no better, but is identical with that of a simple contract creditor.''

To the same effect see *Sherwood v. Saxton*, 63 Mo. 78 ; *Smith et al. v. Frost*, 70 N. Y. 65 ; *Lathrop v. Bampton*, 31 Cal. 17, 89 Am. Dec. 141.

The present action does not aim at an accounting in equity between plaintiff and the trustee, or between plaintiff and the other defendants. The real estate is alleged to have been transferred to *bona fide* purchasers. While plaintiff might have proceeded in equity and compelled defendants to account for the value of the property, she chose a concurrent remedy, which the fraudulent acts of defendants entitled her to adopt. (*Sherwood v. Saxton, supra.*)

An action in tort for damages may be maintained against a trustee who has fraudulently conspired with other persons to make a sale of the trust property in his hands at less than its value and has so sold it, to the injury of a beneficiary in the trust. All parties advising, assisting and aiding the trustee to carry out

his wrongful purposes are also liable to plaintiff in the same action.

The claim that the trust is still open cannot be sustained. It is alleged that the trustee never made any report to any court, or to the creditors. The trustee was not appointed by a court, but by a judge in his individual capacity, at the request of Martindale and his creditors, under a written agreement. There was no suit pending at the time. He was not required by the terms of the stipulation to report to any creditor, or to Martindale, although we have no doubt he could be compelled to do so should he refuse. By the terms of his appointment the property received by him from Martindale was to be sold and converted into money as speedily as possible, and the proceeds applied to the payment in full of Martindale's debts, and, if the proceeds should be insufficient, then to the payment of said debts. *pro rata*, in equal proportions, without preference. It was stipulated that dividends were to be paid by the trustee on the claims of creditors as speedily and as often as the proceeds would admit. Creditors were allowed sixty days to present their claims; if not controverted, they were to be paid. If disputed by Martindale, or any of his creditors, their legality was to be determined by the judgment of a court.

4. Trust presumed to be closed.

In the bill of complaint filed by Ford Harvey against Battey in the federal court on December 20, 1899, the allegations of which, by reference, are made a part of the petition in the present action, it was averred that "all the debts held by the parties to said agreement," the instrument creating the trust, "have not yet been established and determined, but some of them are in controversy and unsettled as to amount."

The creditors were allowed sixty days from the date

Holderman v. Hood.

of the trust agreement, unless further time should be granted by the trustee, to present their claims and demands against Martindale for allowance. This agreement was signed on June 7, 1899. It appears that the trustee sold all the property held by him and converted it into money on or about January 8, 1900. He paid plaintiff $577.79 out of the proceeds on March 20, 1900.

This action was begun in May, 1901, after a lapse of more than a year and six months from the time allowed creditors to present their demands to the trustee for allowance as a matter of right, and after the expiration of fourteen months from the time the trustee received the money which he was obliged to pay out in dividends "as speedily as may be without the unnecessary sacrifice of the same." To say that controversies between the trustee and Martindale's creditors were pending and unsettled when this action was begun would be drawing a forced inference. The trustee, under the instrument giving him power to act, was required : First, to sell the property ; second, to distribute the proceeds. There can be undone at most nothing except the payment of claims. The trust was a simple one, made so in order that the creditors might be expeditiously paid. The terms of it required a speedy sale of the property, and prompt payment thereafter of Martindale's debts.

It is also contended that the compensation of the trustee has not been fixed or paid ; that at least to that extent the trust is still open. We know of no rule of law which would permit a trustee guilty of the misconduct charged against Battey in the petition to recover any compensation for his services. The implication from the petition is that he received pay from Hood and his associates to betray his trust.

The claim that the action is based on contract to recover a new judgment on one already rendered against the Excelsior Mill Company and Martindale, and on tort against the other defendants, is not well founded. While the mill company and Martindale are named as defendants, no judgment is asked against them. This is apparent from the prayer of the petition.

The judgment of the court below is reversed, with directions to overrule the demurrer to the petition.

All the Justices concurring.

CUNNINGHAM, J., not sitting.