SHARTS ET AL. *v*. DOUGLAS, RECEIVER.

[No. 12,979.   Filed October 3, 1928.   Rehearing denied December 20, 1928.   Transfer denied March 30, 1932.]

*Jenkines & Jenkines* and *Garner, Jessup & Tripp,* for appellants.

*Mahoney & Mahoney, Russell J. Wildman, Albert H. Cole* and *Fansler & Douglass,* for appellee.

REMY, J.—Action by appellee, Don Douglas, receiver of certain property of Arthur E. Dunn, against appellants, Benjamin F. Sharts and the Buick Motor Company. Material averments of the complaint are, in substance, as follows: That, on January 20, 1923, and for 16 years immediately prior therto, Dunn was the sole representative of appellant Buick Motor Company in Cass county; that he maintained two salesrooms, one in the city of Logansport and one in the town of

Royal Center; that, in connection with each salesroom, he operated a garage for the storage and repair of automobiles, and for the sale of oil, gasoline and automobile accessories; that, during all of the 16 years, Dunn was the representative of Buick Motor Company in Cass county, having a written contract with the company giving him the exclusive agency for Buick products in that territory, which agency contract is made a part of the complaint as "Exhibit A"; among other things, the contract provided that "either party may cancel or terminate this agreement at any time with or without cause, provided the party so desiring to terminate and cancel the same gives unto the other a written notice of such intention at least thirty days prior to the date of such proposed cancellation"; that, in addition to Buick automobiles, Dunn at all times kept in each of his salesrooms a stock of Buick automobile parts for sale and for use in making repairs; that each of his garages was operated, known and advertised by Dunn as the "Buick Garage," which name was placed over the door of each; that, during the period of his agency, Dunn sold many hundreds of Buick cars, the total purchase price thereof paid by him to the Buick Motor Company being more than $800,-000; that most of the cars so sold have been, from date of sale, and now are, in operation in the city of Logansport and Cass county; that Dunn, in the conduct of the business, at all times maintained in the two garages employees well acquainted with the mechanism of the Buick car, and furnished advice and assistance to purchasers and owners of Buick cars, adjusted complaints and made allowances for defects, and, by courtesy and service to owners and prospective purchasers, created a demand for all the products of the company; that, by reason of his method of doing business, he had the good will of the users and prospective purchasers of Buick automobiles and of the public, which good will was a

valuable asset of the business, and largely made up the going value; that, during all of the time Dunn held the Buick agency, appellant Sharts was the president and manager of the Fenton Investment Company, with offices in the city of Logansport, which company was engaged in the business of buying and selling securities, loaning money and supervising investments; that Sharts was a regular customer of Dunn, and Dunn a patron of Sharts' company, which resulted in a warm personal friendship; that, for some time prior to 1923, there was a general depreciation in the automobile business, by reason of which Dunn became financially embarrassed; at about the same time, he became seriously ill, and was advised by his physician that to save his life a surgical operation would be necessary; that, in his extremity, Dunn sought the counsel and advice of Sharts as his friend and banker, in whom he had at the time the fullest confidence; that, at the conference, it was tentatively agreed between Dunn and Sharts that if the Buick company "would consent to the arrangement proposed and waive all its rights to cancel the contract existing between said company and the said Dunn aforesaid on account of such arrangement, and would agree to continue said contract in force if said arrangement was entered into, that he, the said Dunn, would make and execute a written assignment of all his said business and property to the said Sharts, to be held, managed and controlled by the said Sharts as a trustee for the use and benefit of the said Dunn and his creditors and which would fully authorize the said Sharts as such trustee to continue to carry on the said business in which the said Dunn was then engaged, and to perform for and in the stead of said Dunn all the conditions imposed by said contract between Dunn and said Buick Motor Company upon him the said Dunn; he, the said Sharts, agreeing to accept the said trust and to faith-

fully carry out and execute the same, and that the said trust should continue until all the debts of said Dunn were paid, and that, in case of the death of the said Dunn, the said Sharts would continue to carry on said business until the debts were all paid; . . . that thereafter, on the 6th day of February, 1923, the said Dunn and Sharts together conferred with the defendant, Buick Motor Company, through its aforesaid general agent having charge of its affairs in this state, fully informing said company of all the facts hereinbefore recited, and of the proposed assignment by Dunn of his said property and business to the said defendant Sharts; and at the same time informing said company that said assignment would not be so made unless the company consented thereto and waived any right which it might have under the contract between it and said Dunn to cancel the same on account of such assignment; and that the said company, with the full knowledge of all the facts, then and there consented to the said assignment being so made by the said Dunn to the said Sharts of the said business and property of said Dunn as aforesaid; and that then and there said Buick Motor Company, by its said general agent, contracted and agreed with the said Dunn that if he would make a written assignment of his property and his business as aforesaid to the said Sharts, and turn over to said Sharts, under said agreement, all of his said property as a trustee for the use of said Dunn and his creditors, the said Buick Motor Company would continue in force the said contract hereinbefore referred to, entered into as aforesaid between the said company and the said Dunn, and would waive all its rights to declare the same cancelled or forfeited on account of the said assignment, and that said contract should be continued in force until said trust was fully completed; . . . that, in consideration of the said agreement of the said company to con-

tinue in force said contract as aforesaid and induced thereby, he, the said Arthur E. Dunn, did, on February 17, 1923, make and execute a written assignment of all his property and business to the said Benjamin F. Sharts, to be held by him for the use and benefit of the said Arthur E. Dunn and his creditors, a copy of which is filed herewith, marked 'Exhibit B' and made a part of this complaint, and turned over to said Benjamin F. Sharts the full and complete possession, control and dominion over said property, to be held by him, and said business to be operated by him, under and pursuant to the provisions of said contract and trust thereby created"; that, under the trust agreement, Dunn delivered to Sharts the full possession and control of his automobile business and all the property connected therewith, the total value of which was $52,608.62, including real estate and cash; that, in addition to the property turned over to Sharts as trustee, there was the Buick agency contract and the good will; that Sharts, as trustee, took charge of the business, and up to and including May 31, 1923, the business earned a net profit of $4,397.89, or something more than $1,000 per month; that, while Sharts was operating the business under the trust agreement, he conceived the fraudulent design and purpose of acquiring the business for himself, and of cheating and defrauding Dunn and his creditors out of their rights therein; that the Buick Motor Company, with knowledge of the trust relationship, and with full knowledge of the fraudulent purpose of Sharts to betray his trust and acquire the property and business, conspired with Sharts to accomplish the fraudulent scheme, and, pursuant to the conspiracy, Sharts and the Buick Motor Company did, on June 15, 1923, enter into a contract with each other identical in terms and conditions with the contract between Dunn and the company, and purporting to confer upon Sharts personally all rights with

reference to the sale of Buick products which Sharts at the time held as trustee for Dunn and his creditors; that, some time prior to his securing the Buick agency contract, Sharts, as trustee, in furtherance of his fraudulent scheme, procured another building in the city of Logansport, suitable for garage and salesroom purposes; and at about the time of the execution of the agency contract with him, he moved to such building practically all of the cars, tires, accessories and equipment which he held as trustee, and caused to be placed over the door of the premises the name "Sharts-Buick Garage," and, with the approval of the Buick Motor Company, advertized extensively that he was the sole Cass county agent for the company; that Sharts abandoned the business of Dunn as conducted at the Logansport location known as "Buick Garage," and announced that he had nothing more to do with it; he also abandoned the Dunn business at Royal Center; that, pursuant to his plan to destroy the patronage and good will of the business he held in trust, Sharts, as trustee, permitted the taxes on the trust property to become delinquent, and caused the representative of the holder of a mortgage on the Dunn garage building to be notified that the insurance policies thereon would be canceled, by reason of which facts, the holder of the mortgage caused foreclosure proceedings to be instituted; that, by reason of the alleged fraudulent acts of Sharts and the Buick Motor Company, the business of Dunn was destroyed; that, on June 22, 1923, upon the petition of a creditor of Dunn, the court appointed appellee as receiver of all the property which had been transferred by Dunn to Sharts as trustee, including the business then known as the "Sharts-Buick Garage," but excluding therefrom the agency of the Buick automobiles; if Sharts and the Buick Motor Company had not been guilty of the acts of fraud as alleged, and if Sharts had faithfully continued the business of

Dunn as trustee, he would have realized a profit for Dunn and his creditors in addition to their original value; that, by reason of the fraudulent acts and conspiracy of Sharts and the Buick Motor Company as averred, the plaintiff and the creditors he represents as receiver have been damaged in the sum of $75,000, for which sum judgment is demanded.

The cause was put at issue by separate answers in denial, and a trial resulted in a verdict and judgment for the plaintiff, appellee herein, against both defendants, appellants herein, in the sum of $40,000.

The only errors assigned which will require consideration is the action of the court in overruling appellants' separate motions for new trial, and the only reasons for a new trial which are properly presented to this court for review are that the verdict of the jury is not sustained by sufficient evidence, is contrary to law, and that the damages are excessive.

To discuss the evidence, which covers 892 pages of the record, would unduly extend this opinion, and no good purpose would be served thereby. It is sufficient to say that, having examined the evidence, we find that there is substantial evidence to support all material averments of the complaint.

In their joint brief, appellants assume the theory of the complaint to be that the Buick Motor Company conspired with Sharts to break the Dunn agency contract; and it is argued that "a promisor does not conspire with a third person to break a contract. He breaks it"; that, in such a case, an action for damages does not lie; that "the consequences of such conduct is only a broken contract for which the promisee has his remedy suing upon it"; that an action in tort against the parties in such a case will not lie "in the absence of force, threats or intimidation," which, in the instant case, are not pleaded or proved, citing *Jackson* v. *Morgan* (1911), 49 Ind.

App. 376, 94 N. E. 1021. The entire argument of appellants on the law involved is based upon the proposition thus stated, Unfortunately for appellants, the theory of the complaint is not as suggested. Neither is this an action against Sharts as trustee. The theory of the complaint and the theory upon which the cause was tried is that Sharts, having conceived the fraudulent design and purpose of acquiring for himself the property and business of Dunn, including the agency contract, proceeded to, and did, in violation of his trust obligation, and with the aid and connivance of the Buick Motor Company as a joint tort-feasor, carry out the fraudulent scheme, the result of which was the loss to Dunn and his creditors of the entire business, including not only the agency contract, but the oil, gasoline, repair, storage business and the good will. Such being the theory, the law suggested by appellants is not applicable.

The law is well established that, when a trustee of an express trust has taken advantage of his fiduciary relationship to cheat and defraud the *cestui que trust* out of the property held by him in trust, the *cestui que trust* is not limited to an action for the breach of the trust agreement; he may elect to prosecute an action against the trustee in his individual capacity, in tort, for the damages sustained. *Holderman* v. *Hood* (1904), 70 Kans. 267, 78 Pac. 838; *Brys* v. *Pratt* (1909), 55 Wash. 122, 104 Pac. 169; *Sherwood* v. *Saxton* (1876), 63 Mo. 78; *Lathrop* v. *Bampton* (1866), 31 Cal. 17, 89 Am. Dec. 191. It is also the law that a third party who has aided and abetted the trustee in carrying out the fraudulent scheme may be joined as defendant in the same action. *Holderman* v. *Hood, supra.*

It is alleged in the complaint, and the jury by its verdict, in effect, found, that Sharts took advantage of his

fiduciary relationship to acquire for himself the business which Dunn through years of work had built up, and which, under Sharts' own management as trustee, had produced a net profit of more than $1,000 per month. Sharts' failure as trustee to pay the current taxes and the interest on the mortgage note, and the opening by him in his own name, at the very time he was acting as Dunn's trustee, of a Buick garage and salesroom, was evidence sufficient to justify the jury in finding that he precipitated the Dunn receivership which, under the circumstances, resulted in the complete destruction of the Dunn business, which consisted, not only of the sale of automobiles under the Buick agency, but the sale of oils and gasoline, as well as the business of repairing and storing of automobiles.

The action of the Buick Motor Company in canceling the Dunn agency and giving its contract for the sale of its products in Cass county to Sharts at this particular time, which it admits having done, was an active participation in the wrongdoing. The Buick Motor Company, although denying that it agreed to waive its right to cancel the Dunn agency contract, as alleged in the complaint, of which there was some evidence at the trial, presents an ingenious argument that, even if it did agree to waive its right to cancel the Dunn agency contract, its agreement was invalid, and that it was within its rights in terminating the agency as it did. It is unnecessary to consider this argument and to discuss the question thus presented. If it be conceded that the Buick Motor Company had the right to cancel the agency contract when it did, it did not have the right, under the facts alleged in the complaint and shown by the evidence, to give the agency to Sharts. It knew that Sharts was trustee for Dunn and Dunn's creditors, and it knew that the business in the hands of the trustee was making a net profit of $1,000 per month

and more. It is inconceivable that Sharts would have planned to get the Dunn business for himself except with the understanding that he was to supplant Dunn as the Buick sales agent. It is apparent that, if the Indiana representative of the Buick agency had said to Sharts that, under the circumstances, the company could not let him have the agency, Sharts would have proceeded no further with the nefarious scheme. The wrongdoing of the Buick Motor Company was, in part at least, in transferring the agency to Sharts, under the circumstances alleged in the complaint and established by the evidence; by so doing the company became a party to Sharts' betrayal of his trust.

It will be unnecessary to discuss at length the question of excessive damages. There is evidence tending to show that the tangible property transferred by Dunn to Sharts as trustee, less the sum unaccounted for by the defense at the trial, is in excess of the damages assessed by the jury. Furthermore, the character of the action is such that exemplary damages could be recovered. It follows that the amount of damages assessed by the jury is not such as will require a reversal of the judgment.

Affirmed.