Argued May 31, affirmed June 27, rehearing granted October 24, reargued November 14, modified on rehearing December 27, 1916. Further rehearing denied January 16, 1917.

## FIRST NAT. BANK v. COURTRIGHT.*

(158 Pac. 277; 161 Pac. 966.)

**Venue—Foreclosure of Lien.**

1. Under Section 396, L. O. L., providing that suits in equity for the foreclosure of a lien on real property must be tried in the county where the property is situated, the trial court had no jurisdiction to foreclose plaintiff's lien on real property situated outside of the county.

**Appeal and Error—Jurisdiction of Appellate Court.**

2. In an action to foreclose a lien on real property outside of the county, where the trial court did not have jurisdiction for that purpose, the Supreme Court does not have jurisdiction on appeal.

### ON REHEARING.

**Fraudulent Conveyances—Burden of Proof.**

3. Where a debtor conveys substantially all his estate to a near relative, ostensibly to satisfy his debt to the latter, in a suit by creditors to set aside a deed for fraud, the grantee must establish clearly that there was a valuable consideration therefor.

[As to proof of fraud in a suit to set aside a conveyance as being fraudulent as to creditors, see note in 11 Am. St. Rep. 587.]

*On transfer of property by debtor in satisfaction of debt, see note in 36 L. R. A. 341, 361.          REPORTER.

### Interest—Computation—Partial Payments.

4. The rule for casting interest, where partial payments have been made, is to apply the payment, in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest is to be computed on a balance of principal remaining due. If the payment be less than the interest, the surplus of the interest must not be taken to augment the principal; but interest continues on the former principal until the period when the payments, taken together, exceed the interest due, and then the surplus is to be applied toward discharging the principal, and interest is to be computed on the balance as aforesaid.

### Mortgages—Trust Deed.

5. Where land is transferred to a trustee to secure a loan from a bank, it is to be treated as a mortgage, and foreclosed only in the statutory manner.

### Mortgages—Duty of Trustee Under Trust Deed—Foreclosure.

6. The *cestui* may call upon the trustee to foreclose such mortgage by appropriate legal proceedings, and apply the proceeds to the debt, or the judgment in which the debt has been merged.

### Mortgages—Form of Decree.

7. In a creditors' suit, in which plaintiff was the *cestui* of a deed securing its loan, and the trustee of such trust and the debtor and others were defendants, the complaint asking for decree requiring the trustee to "sell and dispose" of the property held by him as trustee, a decree would be entered merely directing the trustee to foreclose the mortgage by appropriate proceedings, although the plaintiff conceded that it did not seek to obtain strict or ordinary foreclosure of the conveyance, since, in any event, a decree directing the trustee to sell and dispose of the land would not empower a sale without suit to foreclose the mortgage.

From Multnomah: George N. Davis, Judge.

Department 1.    Statement by Mr. Justice Benson.

This is a creditor's suit by the First National Bank of Portland, whereby it is sought to subject certain property now in the hands of defendant Morris L. Courtright to the payment of a debt contracted by Harry M. Courtright. The substance of the complaint is that, for the past six or seven years, Harry M. Courtright has been engaged in the business of purchasing delinquent tax certificates and in other transactions germane thereto; that in carrying on the occupation he borrowed large sums of money from the

plaintiff; that on November 4, 1914, he owed plaintiff
$43,500, to evidence which he executed to it his promis-
sory note, bearing interest at the rate of 7 per cent,
with the customary provision for attorney's fees;
that, upon the failure of the maker to pay this note
at maturity, an action was commenced for its recovery,
resulting in a judgment for plaintiff in the sum of
$45,190 and $300 as reasonable attorney's fees, which
was duly docketed in the judgment lien docket of Mult-
nomah County; that, during the time Harry M. Court-
right was so borrowing money from the plaintiff,
largely, if not wholly, with the money so borrowed he
purchased and acquired, in addition to a large num-
ber of certificates of delinquency from the sheriffs of
Multnomah and Clackamas Counties, certain real prop-
erty in the City of Portland, a description of which
is set out in the complaint; that, while he was so bor-
rowing moneys from plaintiff, he represented to it that
his net worth exceeded $100,000; that about November
4, 1914, the date of the execution of the note above
mentioned, he represented to plaintiff that he desired
to secure the indebtedness due plaintiff, and, without
solicitation on the part of plaintiff, he executed to
the defendant Security Savings & Trust Company
deeds of conveyance of certain real property situated
in Skamania County, Washington, and Clackamas
County, Oregon, representing that these properties
had considerable value, but that, in fact, as plaintiff
afterward discovered, were practically worthless; that
at various times during the year 1914 while Harry M.
Courtright was so indebted to plaintiff, for the pur-
pose of hindering, delaying and defrauding it, he con-
veyed to Morris L. Courtright, his father, all of the
Portland real estate above mentioned, and assigned
to him substantially all of the certificates of delin-

quency held by him aggregating about $37,500 in value; that these transfers were without consideration, and were made with the understanding that the father should hold the property in trust for the sole use and benefit of the son, and that such action has placed the property beyond the power of the court to reach in an action at law, or upon execution; that the purpose of these transfers was to cheat and defraud plaintiff and prevent it from collecting the money due it; that the father paid no consideration therefor, but, at the time and prior to the execution thereof, had full knowledge of the son's fraudulent intent and conspired with Harry M. Courtright to defraud plaintiff, and well knew at the time of such transfers that his son had no other property with which to satisfy plaintiff's claim; that the son has no property within the jurisdiction of the court subject to execution other than certain personal property already seized by the sheriff of about $1,218 in value; then follow allegations upon which to base a temporary restraining order to certain officials in regard to the disposal of certain property. The prayer is for a decree canceling the transfers to the father as fraudulent and applying the property to the payment of plaintiff's claim; asking the appointment of a receiver; also for an accounting with the father, and for a foreclosure of plaintiff's lien upon the real estate in Skamania County, Washington, and Clackamas County, Oregon, and for general relief.

To this complaint the father and son file separate answers in which, after denying the allegations of fraud and deceit, they allege affirmatively that on August 1, 1914, the son was indebted to the father on account of moneys loaned in the amount of about $50,000, for which security had been given to the

amount of about $15,000; that on the same day the father demanded payment from the son of this debt; that the son then assigned to him delinquency certificates of the value of about $20,000; that on November 4, 1914, the son still owed the father $15,000, and in payment thereof conveyed to him the Portland property above mentioned; that the assignments and conveyances were made in good faith in payment of a *bona fide* debt without the intent to defraud; and that plaintiff at all times was fully informed as to such indebtedness.

A trial being had, a decree was entered in favor of defendants, from which plaintiff appeals.

Affirmed.

For appellant there was a brief over the name of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Joseph Simon.*

For respondents there was a brief over the names of *Mr. Morris L. Courtright* and *Messrs. Ridgway & Johnson,* with an oral argument by *Mr. Albert B. Ridgway.*

Mr. Justice Benson delivered the opinion of the court.

It will be seen from the statement of the issues that we are simply to determine from the evidence whether or not the transfer of property from the son to the father was an honest one and in payment of a *bona fide* debt. The evidence is voluminous, and covers a vast number of individual transactions. We have gone through this record with extreme care, at a considerable expense of time, labor and patience. A detailed, analysis would not be of any value to the individual litigants or to the bar generally. It is

therefore deemed proper to say that we are unable to find any convincing evidence that Morris L. Courtright was guilty of any fraud or deceit in connection with the transactions of which complaint is made. It is true that the conduct of Harry M. Courtright has been far from praiseworthy or commendable. He did submit to the plaintiff bank several written statements of his financial condition which represented him as having net assets in excess of $100,000, when in fact he had no assets of any appreciable value. He does not in any definite way account for the large sums of money which passed through his hands, and the glaring fact remains that he has grossly wronged the bank that befriended him; but we think the evidence justifies the findings of the trial court that he did owe his father a large amount of money, the value of the property transferred does not exceed the indebtedness, and there is nothing in the record disclosing any knowledge upon the part of the father in relation to his son's wrongful acts.

1, 2. We cannot decree a foreclosure of plaintiff's lien upon the real property in Skamania County, Washington, and Clackamas County, Oregon, for the trial court had no jurisdiction for that purpose, and it is therefore beyond our power: Section 396, L. O. L.; 27 Cyc. 1519, and cases there cited.

It follows that the decree of the trial court must be affirmed, and it is so ordered.

AFFIRMED.   MODIFIED ON REHEARING.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE BURNETT concur.

Modified and affirmed December 27, 1916.
Further rehearing denied January 16, 1917.

ON REHEARING.

(161 Pac. 966.)

On rehearing former opinion modified and affirmed.

For the petition there was a brief over the name of *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Joseph Simon.*

*Contra,* there was a brief over the names of *Messrs. Ridgway & Johnson* and *Mr. Morris L. Courtright,* with an oral argument by *Mr. Albert B. Ridgway.*

In Banc.    MR. JUSTICE HARRIS delivered the opinion of the court.

1. On account of the importance of this suit and because of the large amount of money involved in the controversy, a rehearing was granted in order to afford an opportunity to correct any error that we may have committed in the original opinion reported in *First Nat. Bank* v. *Courtright, ante,* p. 490 (158 Pac. 277) ; and, after again hearing the arguments of counsel, we have for the second time scrutinized each of the numerous business transactions, covering a period of about six years, between Morris L. Courtright and his son, Harry M. Courtright.   Every one of the many letters, checks, drafts and papers which were received in evidence has been examined with care, and the testimony of all the witnesses has received our closest attention, in order that we might, if possible, discover the truth.   We have been mindful of the fact that the Courtrights are father and son, and therefore throughout the entire examination of the record we have applied the rule announced in *Marks* v. *Crow,*

14 Or. 383 (13 Pac. 55), and again stated in *Wright* v. *Craig,* 40 Or. 191, 195 (66 Pac. 807, 809):

"Where one who is in debt at the time conveys substantially the whole of his estate to" a near relative, "ostensibly in satisfaction of his debt to the latter, in a suit by creditors to set aside a deed for fraud, it is incumbent upon the grantee to establish by satisfactory proof that there was a valuable and adequate consideration for the deed; and, unless he can give a clear and precise account of the items constituting the alleged debt, a fraudulent intent will be inferred."

Because of the fact that nearly all of the property of the debtor has been transferred to a near relative, and practically no assets have been reserved to pay another creditor, and on account of the harsh consequences worked by that transfer, we have thrown the searchlight of suspicion upon each letter, check, paper, writing and transaction in order to detect any possible fraud.

To recite the evidence upon which our conclusions are based would be to perform a lengthy, but useless and fruitless, task; and it is therefore sufficient to say that the evidence, when considered in its entirety, and after being subjected to the severe test imposed by the rule defined in *Marks* v. *Crow, supra,* satisfies us that Morris L. Courtright was in truth a genuine creditor of Harry M. Courtright, and that they agreed that the son was to pay 7 per cent on all loans by Morris L. Courtright. The father procured most of the money by borrowing from banks, and is entitled to credit for all sums borrowed from the banks, as well as all amounts which he was able to supply without borrowing. Morris L. Courtright has satisfactorily shown that on October 7, 1908, he assigned to his son four delinquency certificates, aggregating $432.27; and by means of checks, drafts, deposit slips

and the records kept by banks it is established beyond a reasonable doubt, even, that Harry M. Courtright received from his father, between October 7, 1908, and July 6, 1914, 71 different cash items, ranging in amounts from $10 to $10,000, and aggregating $82,430.02. The son received from the father the total sum of $82,862.29 in cash and delinquency certificates; and this entire sum, less $100, which according to his own testimony Morris L. Courtright "gave" to the son on October 7, 1908, is to be treated as money loaned.

Between January 2, 1912, and August 22, 1914, Harry M. Courtright made 46 cash payments to his father, ranging in amounts from $30 to $12,000, and aggregating $42,367.86. The assignment of the Cherryman mortgage and the conveyances made on April 7, 1914, and July 1, 1914, may be treated as payments to the amount of $6,634; and in addition to this amount Morris L. Courtright must be charged with $15,000 on account of delinquency certificates which he had received from his son prior to August 22, 1914, and then assigned to banks in Bay City, where the certificates were still held, as security for money borrowed from those banks. Harry M. Courtright borrowed the total sum of $82,762.29, and repaid $64,001.86, during the period ending August 22, 1914. Before striking a balance on that date, however, it is necessary to ascertain the interest earned by the loans made by Morris L. Courtright.

The borrower and lender agreed that the moneys loaned should bear interest at 7 per cent, but the litigants disagree as to the amount of interest earned at that rate. This difference results from the variant methods of computation employed, since one party has used the method known as the "mercantile rule,"

while the other party has followed what is commonly known as the "United States rule." Under the mercantile rule the account is stated calculating interest on each item of the debt and allowing interest on each payment; but this method has received the approval of only a few courts: 22 Cyc. 1566. More than a century ago, in *Connecticut* v. *Jackson,* 1 Johns. Ch. (N. Y.) 13, 7 Am. Dec. 471, Chancellor Kent announced a rule for computing interest where partial payments are made, and this method has been adopted by most of the courts in this country: 22 Cyc. 1564. This rule has been heretofore employed by us whenever it was necessary to compute interest where partial payments were made, and we have therefore calculated the interest due from Harry M. Courtright according to the United States rule.

2. The formula prescribed by Chancellor Kent reads thus:

"The rule for casting interest, where partial payments have been made, is to apply the payment, in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due. If the payment be less than the interest, the surplus of the interest must not be taken to augment the principal; but interest continues on the former principal until the period when the payments, taken together, exceed the interest due, and then the surplus is to be applied toward discharging the principal, and interest is to be computed on the balance as aforesaid."

Calculating the interest according to the rule adopted here, the loans made by Morris L. Courtright had earned $12,729.65 during the period ending August 22, 1914. In addition to the $15,000 in delinquency tax certificates previously mentioned, in July

or August, 1914, Harry M. Courtright assigned to his father certificates amounting to $20,073.80; and hence, if a balance is struck for the day ending August 22, 1914, it will be seen that Morris L. Courtright is to be credited with a total sum of $95,491.94 and charged with $84,075.66, leaving a balance of $11,416.28 due from Harry M. Courtright.

The plaintiff contends, and we shall assume, without deciding, that Morris L. Courtright has admitted in his answer that the land conveyed to him on November 6, 1914, was taken at a price of $10,000, although the evidence shows that the net value of the realty does not exceed one fourth of that sum.   Even though the land is estimated at $10,000, and though no interest is calculated for the period commencing August 22, 1914, there is nevertheless a balance of $1,416.28 due on November 6, 1914, from Harry M. Courtright after the land, figured at $10,000, is applied on the balance of $11,416.28 carried forward from August 22, 1914.   The plaintiff argues that Morris L. Courtright should be charged with certificates amounting to $44,831.28, instead of $35,073.80.   Morris L. Courtright resided in Bay City, Michigan, while Harry M. Courtright lived in Portland, Oregon, and the latter assigned certificates to the former, who in turn assigned them to banks in Bay City to secure money borrowed.   Whenever a certificate was redeemed, the son wrote to the father to return the certificate, and when the instrument was returned, the son would receive the redemption money for it.   The contention made by the plaintiff takes no account of the certificates returned by Morris L. Courtright, and for which the son, and not the father, received the redemption money.   As we read the record, Morris L. Courtright did in fact receive certificates amounting to $44,831.28, together with some additional certificates not charged

against him by the bank; but after tracing the course followed by each certificate, as shown by letters, assignments and other documents, we have ascertained that Morris L. Courtright should only be debited with certificates valued at $35,073.80 because all in excess of that amount were returned to Harry M. Courtright, who received and then used the redemption money, or sent it to his father as partial cash payment.

After a critical examination of all the testimony and exhibits received in evidence, we can reach no other conclusion than that the moneys received by Harry M. Courtright were loans, and that there was a genuine relationship of creditor and debtor; that the cash, land and certificates which were paid, assigned or transferred to Morris L. Courtright were received and applied by him on a real and not a fictitious debt, without any intention to defraud another creditor; and that, while the debtor preferred one creditor to another, the transaction did not result in the debtor preferring himself, for the reason that it did not involve a reservation of any interest for the debtor.

3-5. The plaintiff urges that in any event it is entitled to "a decree requiring the Security Savings & Trust Company to sell and dispose of the real property" which was conveyed to the company by Harry M. Courtright, although the bank concedes that it "does not by its complaint seek to obtain a strict or ordinary foreclosure of the conveyance made to the Security Savings & Trust Company." We have found that the plaintiff is not entitled to any relief against Morris L. Courtright, and hence the only question remaining is whether the bank is entitled to a decree directing the Security Savings & Trust Company to "sell and dispose of" certain land. On No-

vember 4, 1914, Harry M. Courtright gave his note to the bank in the sum of $43,500, and then, according to a specific allegation in the complaint, he conveyed his lands in Skamania County, Washington, and Clackamas County, Oregon, to the Security Savings & Trust Company as security for the note. The bank reduced the note to a judgment before the commencement of this suit; no part of the land is in Multnomah County, where this suit was commenced and tried; this is a creditors' bill, and not a proceeding to foreclose a mortgage; and the main purpose for which the suit was commenced fails of accomplishment, for the reason that the bank is not entitled to any relief against Morris L. Courtright. The conveyance is not like the one spoken of in *Ladd* v. *Johnson,* 32 Or. 195 (49 Pac. 756), but the transfer was made to secure a debt, and therefore the instrument must be treated as a mortgage, and should be foreclosed in the manner prescribed by the statute, and not otherwise: *Thompson* v. *Marshall,* 21 Or. 171 (27 Pac. 957); *Marquam* v. *Ross,* 47 Or. 374, 407 (78 Pac. 698, 83 Pac. 852, 86 Pac. 1); *Starr* v. *Kaiser,* 41 Or. 170, 175 (68 Pac. 521). The bank, of course, has a right to call upon the Security Savings & Trust Company to foreclose the mortgage by appropriate legal proceedings, and have the proceeds of a sale on foreclosure applied on the judgment in which the note has been merged; but a decree directing the company to sell and dispose of the land would not empower a sale without a suit to foreclose the mortgage, and with this explanation a decree will be entered directing the Security Savings & Trust Company to foreclose the mortgage by appropriate proceedings.

Even though the plaintiff is not entitled to an annulment of any transfers made to Morris L. Court-

right, yet under all the circumstances we think it fair that the decree be without costs to any party in either court; and with these modifications we adhere to our original opinion, and affirm the findings made by the Circuit Court.

MODIFIED AND AFFIRMED ON REHEARING.

FURTHER REHEARING DENIED.

---

·Argued December 19, 1916, reversed January 16, 1917.