**TEDLOCK et al. v. TORBERT et al.**

No. 11128—Opinion Filed May 1, 1923.

(Syllabus.)

**1. Mortgages—Foreclosure Under Power of Sale.**

Mortgages with powers to be executed in pais are watched with much jealousy and scrutinized with great care by courts of equity, and sales made under such powers will not be sustained unless conducted with fairness, regularity, and scrupulous integrity.

**2. Same—Invalidity of Sale.**

A sale of property made under a power contained in the mortgage providing that the sale shall be made at public sale to the highest bidder, where at the time of the sale it was announced that the bids should be for an aggregate amount less the taxes, and one bidder offered $400 and another $500 less taxes, and where it appears that at that time the taxes had not been paid or the amount ascertained, and the second offer was accepted and deed made, which shows consideration to be $61.70, that is, $500 less taxes which were ascertained to be $438.30, held invalid because it presents such uncertainty as to whether the property was being offered free of the tax lien or subject to the tax lien as to render the sale unfair to the mortgagor.

Error from District Court, Ottawa County; A. C. Brewster, Judge.

Action by Basil D. Tedlock and others against John W. Torbert and others for possession of land and to cancel deed. Judgment for defendants, and plaintiffs bring error. Reversed, and remanded, with directions.

Webster & Webster, for plaintiffs in error.

Frank Nesbitt, for defendants in error.

COCHRAN, J. This action was commenced by plaintiffs in error for the possession of lot 7, block 16, in the town of Miami, Okla., and to set aside a deed executed on a mortgage foreclosure sale made under a power contained in the mortgage. Judgment was rendered for the defendants in error, and the plaintiffs in error have prosecuted this appeal. The parties will hereinafter be referred to as plaintiffs and defendants, as they appeared in the trial court.

The question presented here is the validity of a sale made under a power of sale contained in a mortgage executed November 29, 1901. At the time the mortgage was executed the property was owned by R. E. Pursley and wife, and the mortgage was executed to B. F. Younger to secure the payment of a promissory note for $135 due November 29, 1903. This mortgage contained the following power of sale:

"The said grantee, or his assignee, agent or attorney in fact, shall have power to sell said property at public sale to the highest bidder for cash at the corner of Fourth and Main streets in the town of Miami, Indian Territory, public notice of the time and

place of said sale having been first given thirty days by advertising in some newspaper published in said town or by ten printed or written handbills posted in ten public places in said town, at which sale the said grantee or his agent, assignee or attorney in fact, may bid and purchase as any third person might do, and we hereby authorize said grantee or his assignee to convey said property to anyone purchasing at said sale, and the recitals of his deed of conveyance shall be taken as prima facie true, and the proceeds of said sale shall be applied, first, to all costs and expenses attending said sale; second, to the payment of said debt and interest; and the remainder, if any, shall be paid to said grantor."

On December 22, 1906, Pursley conveyed his equity in this property to John Tedlock, and on March 24, 1915, Tedlock died intestate, leaving as heirs the plaintiffs in this case. The property was rented by J. S. Howard, administrator of the estate of John Tedlock, deceased, to John W. Torbert, and John W. Torbert went into possession under this rental contract. On November 6, 1916, Torbert purchased the Pursley note and mortgage from B. F. Younger, and, the mortgage being in default, immediately proceeded to post notices of the sale of the mortgaged premises. At a sale held January 22, 1917, the said John W. Torbert purchased the property and executed to himself a deed to said property. The notice under which the sale was made provided that the sale would be made on the 22nd day of January, 1917, at 2 o'clock p. m., to the highest bidder for cash, at the corner of Fourth and Main streets in the town of Miami, Ottawa county, state of Oklahoma, and, after reciting the description of the property and execution of the mortgage, and the assignment thereof to John W. Torbert, stated:

"That the conditions and covenants of said mortgage have been broken and that by virtue of the power therein granted the mortgagee or his assignee have the right and power to sell said real estate for condition broken; that there is now past due and unpaid thereon the sum of $203.25, that said proceeds of sale will be applied on the costs of sale and the above named indebtedness and the overplus paid to the mortgagors, if any."

The mortgage deed contains the following recitation as to the sale of the property and the purchase price therefor:

"Whereas, pursuant to the terms of said mortgage and public notices given, the said assignee of said mortgage, John W. Torbert, in Miami, Oklahoma, at public venue, for the highest bidder for cash, on the 22nd day of January, 1917, at 2 o'clock p. m. and at said sale the highest and best bid was made for the benefit of the assignee of the mortgage, John W. Torbert, by his agent, and being five hundred dollars less the accrued taxes thereon amounting to four hundred and thirty-eight and 70/100 dollars and that said property was stricken off and sold to John W. Torbert for said sum less said taxes, viz., sixty-one and 30/100 dollars.

"Whereas, I, John W. Torbert, the assignee of the said mortgage, under and by virtue of the power given the said mortgagee, his successors and assigns, and by virtue of the facts as they appear in the premises, I hereby transfer, grant, bargain, sell and convey all the right, title, and interest of said R. E. Pursley and Maryetta Pursley, said mortgagors, to John W. Torbert, in and to the following described real property, to wit: lot number seven (7) in block number sixteen (16) in the town of Miami, Ottawa county, Oklahoma, as shown by the original plat thereof filed with the secretary of the Interior of the United States, for and in consideration of the said sum of $61.30, receipt whereof I hereby acknowledge in full, the said sum being the highest and best bid at said sale."

The plaintiffs attack the sale on numerous grounds, but all of the objections to the sale are based primarily upon the holding of the Supreme Court of Arkansas in the case of Littell v. Grady et al., 38 Ark. 584, in which the court said:

"Deeds of trust and mortgages, with powers to be executed in pais, belong to a class of instruments which are watched with much jealousy by courts of chancery. Those who make them are often, indeed most generally, under a pressure for money or credit, and somewhat at the mercy of those who afford accommodations. They cannot, as we think this case well illustrates, always protect themselves against oppressive, unjust, and unfair executions of the power, which may be within the letter of the trust, and which, amongst parties dealing on equal terms, would not amount to actual fraud. Parties who execute these powers are properly held to 'uberrima fides', in view of the danger of oppression, and the courts of chancery have been used to interfere to prevent any unnecessary sacrifice, or unfair disregard of the rights of the debtor. Where the trustees or beneficiaries do not wish to become the subjects of this jealousy, and are diffident of enduring the test, they may always invoke the aid of equity, and foreclose under its supervision. It is always the safe plan for all parties. 'Sales under powers,' says Mr. Perry (Trusts, sec 602, X), 'in deeds of trust, or mortgages, are a harsh mode of foreclosing the rights of the mortgagor. They are scrutinized by courts with great care, and will not be sustained unless conducted with all fairness, regularity, and scrupulous integrity. Upon very slight proof of fraud, or unfair conduct, or of any departure from the terms of the power, they

will be set aside.' * * * It will be readily seen that in all cases the trustee will best subserve the interest of the creditor by making such sale, as would be in price, most advantageous to the debtor. Incidentally, and to the extent of the debt only, the creditor is a cestui que trust under the power. Beyond that, and generally, the person entrusted with the power of sale owes a fiduciary duty to the real owner of the land to secure to him all advantages reasonably within his power, consistent with his trust. It is the plain, sensible dictates of a spirit of fair dealing between man and man."

The trial court found that the property at the date of the sale was of the reasonable value of $1,500, and that the sale of the property was, so far as price was concerned, inadequate as to its value. The court further found that the property was bid in at said sale by John W. Torbert for $500, which sum included taxes accrued upon said land and unpaid in the sum of something like $445. The plaintiffs contend that the sale was unfairly and irregularly made and for a grossly inadequate consideration. The defendants contend that, inasmuch as the mortgage contained a provision requiring the mortgagors to pay the taxes and such taxes were unpaid at the time of the sale, and a lien upon the property, the mortgagee had a right to make the sale free of the tax incumbrances and to apply the proceeds of the sale to the extinguishment of the tax lien; or he had the right to sell the property subject to the tax lien, the purchaser to pay such taxes. It is not necessary to determine here the right of the mortgagee under the terms of the mortgage and under the notice which was given to apply the proceeds of the sale to the extinguishment of the tax lien instead of applying the same as provided in the mortgage to the costs of sale, the indebtedness due the mortgagee, and to pay the overplus to the mortgagor, for, as we view it, it is only necessary to determine whether a fair sale was made. The court found that the sale was made for $500, which sum included taxes then due upon said land and unpaid. According to that finding, the sale was made free of the tax incumbrance for $500, such portion of the proceeds as necessary to be used to pay off the tax lien; but, according to the recital in the deed, the sale was made for $61.30, that is, $500 less the accrued taxes, which necessarily means that the same was sold for $61.30, the purchaser taking the property subject to the taxes. Testimony was introduced as to what happened at the sale as follows:

"Q. Mr. Torbert, was yours the only bid made for this property or made by you on behalf of your son? A. No, sir; there was another man bid. Q. Do you know who it was? A. No, sir; he was a stranger to me. Q. Do you know the amount he bid? A. $400."

On cross-examination he testified as follows:

"Q. That's $400 less the accrued taxes? A. I suppose so; he offered $400. Q. Less the accrued taxes? A. He didn't say. Q. Then you raised it to $500 less the taxes? A. Yes, sir."

The following testimony was by the attorney for Mr. Torbert:

"It was explained to all persons present at the sale that there was in excess, probably in excess, of $400 accrued taxes, and that these taxes would have to be paid and, not knowing the sum, it would only be proper to make the bids for an aggregate sum less the taxes, which could afterwards be ascertained or paid."

From this testimony we cannot conclude that this sale was fairly made. Perhaps there was no intention on the part of the mortgagee to mislead persons desiring to bid on this property, but it was his duty to act in utmost fairness to the mortgagor. Viewing the proceeding in the light of what transpired at that time, it is difficult for us to determine whether it was intended that the bid should be for a definite sum, the purchaser to take the property subject to the taxes, or for a definite sum, the purchaser to take the property free from taxes and proceeds applied in payment of such taxes. The trial court concluded that the sale was really made for $500, which included taxes. The mortgage shows clearly by the terms of the deed, which he executed to himself, that he intended his bid to be for only such amount as $500 exceeded the amount of the taxes on the property. According to Mr. Torbert's testimony, the other person bidding on the property offered $400, and this bid was made in the face of the statement by the auctioneer that the bid should be for an aggregate sum less the taxes, and was probably understood by the person bidding the $400 to mean that he should deduct from what he considered to be the proper price for the property the probable taxes due thereon, and make his bid for the difference. Torbert then bid $500 less the taxes, which the auctioneer construed to be the best bid. This uncertainty could have been very easily avoided by announcing that the sale would either be made free of incumbrances or that the sale was being made subject to the tax lien. In either event, a definite and certain amount would have been offered, each bidder being placed on an equal footing and know-

ing just what he was bidding and what his competitor was bidding; but, instead of that, the manner in which the sale was actually made left it uncertain as to whether it was intended that the purchaser should take the property subject to the tax lien or free from it. It is, therefore, our opinion that the sale so made was invalid.

The defendants have not called our attention to any portion of the record which justified the finding of the court that the plaintiffs are barred from recovering in this case by reason of the former adjudication in the case of Howard, Adm., v. Torbert, and we shall, therefore, not consider that question.

The judgment of the trial court is reversed, and cause remanded, with directions to render judgment for the plaintiffs, canceling the deed executed under the mortgage sale, and quieting plaintiffs' title to said property, subject, however, to a lien in favor of defendant, John W. Torbert, for the unpaid balance on the Pursley note, with interest thereon, less such amount as may be found due to plaintiffs for the reasonable rental of the property during the time same has been occupied by the defendant, and for other proper proceedings not inconsistent with the views hereby expressed.

JOHNSON, C. J., and McNEILL, KANE, NICHOLSON, and MASON, JJ., concur.