Argued at Pendleton, October 28, 1941; affirmed January 13, 1942

## HARPER et al. v. INTERSTATE BREWERY CO. et al.

(120 P. (2d) 757)

Before Kelly, Chief Justice, and Rand, Bailey, Lusk and Brand, Associate Justices.

*James C. Dezendorf*, of Portland (Dey, Hampson & Nelson and Leon W. Behrman, all of Portland, on the brief), for appellants.

*Hugh L. Biggs*, of Portland (Maguire, Shields & Morrison, of Portland, Biggs & Yturri, of Ontario, and Don K. Grant, of Portland, on the brief), for respondent.

BRAND, J. At the close of all the evidence the defendants moved to require the plaintiffs to elect

whether they were proceeding in contract or tort. Plaintiffs elected to proceed in tort. Immediately upon the election being made by plaintiffs the defendants moved for a directed verdict upon the asserted ground that the complaint fails to state a cause of action in tort and in support of the motion counsel stated:

"* * * it is our position that in this the contract which has been admitted in the case, when construed in the light of surrounding circumstances as it must be, does not raise any obligation or does not permit the inference of any obligation existing in law outside of the obligation of the contract itself, and therefore if the contract is breached it raises only an action for breach of contract and not one for tort."

Defendant Gage joined in the motion of the Brewery Company for a directed verdict, whereupon counsel for the Brewery Company said:

"I think we should add to our motion for a directed verdict a request that the jury be discharged from the power to determine the case because it is a cause in equity."

The two motions are obviously inconsistent, the one asserting that the complaint states only a simple cause of action for breach of contract and the other asserting that the complaint sets forth only a suit in equity. However, it is apparent that the two motions were intended to be in the alternative, and the position taken by defendants at the trial seems to have been, first, that the plaintiffs had alleged only an action upon the contract and therefore could not sue in tort, and second, that if, contrary to their first contention, the plaintiffs had a right to sue in any form other than ex contractu, it must be because the contract created a fiduciary relation between the parties, and in that event

the defendants contended that the plaintiffs' only remedy would be in equity. Defendants insist that the contract did not create a fiduciary relationship.

■■ We shall first explore the law relative to defendants' contention that plaintiff's case rests solely upon breach of contract and that therefore tort will not lie. It may be stated as a general rule that a mere breach of contract does not constitute a tort nor authorize an action on the case.

"*The Distinction between a Tort and a Breach of Contract* is broad and clear, in theory. In practice, however, it is not always easy to determine whether a particular act or course of conduct subjects the wrongdoer to an action in tort, or merely to one for a breach of contract. The test to be applied is the nature of the right which has been invaded. If this right was created solely by the agreement of the parties, the plaintiff is limited to an action *ex contractu*. If it was created by law he may sue in tort." Burdick on Torts, (4th ed.) Page 46.

The same author quotes with approval from Chief Justice Tindal in the leading case of *Boorman v. Brown,* 3 Q. B. (Ad. v. E. N. S.) 511 (1842), affirmed in the House of Lords, 11 Cl. & F. 1 (1844), as follows:

"* * * That there is a large number of cases in which the foundation of the action springs out of privity of contract between the parties, but in which, nevertheless, the remedy for the breach or non-performance is indifferently either assumpsit or case upon tort, is not disputed. Such are actions against attorneys, surgeons and other professional men, for want of competent skill or proper care in the service they undertake to render; actions against common carriers, against ship-owners on bills of lading, against bailees of different descriptions; and numerous other instances occur in which the action is brought in tort or contract, at the election of the plaintiff." Burdick's Law of Torts, (4th Ed.) p. 10.

Defendants rely upon the following excerpt from Corpus Juris:

"* * * It is a distinguishing characteristic of torts that the duties from the violation of which they result are creatures of the law and not of particular agreements. As contractual duties proper have their origin in, and derive their vitality directly from, the assent of the parties, a breach of such duties only does not constitute a tort." 62 C. J. 1091-1092, § 2.

However in the same treatise it is said:

"* * * causes of action need not be completely disconnected from contracts in order to constitute torts. Indeed, the existence of a contract may be one of the circumstances requisite to give to particular conduct the character of a breach of duty and thus to make it tortious." 62 C. J. 1093, § 3.

"* * * But where there is a breach of duty imposed by the law apart from any consent of the person owing the duty, and the remedy claimed is not the payment of a definite sum of money but pecuniary compensation for the injury, then we have a wrong independent of contract which gives rise to an action of tort." Clerk & Lindsell on Torts (7th Ed.) p. 1.

Thus it may be necessary for a plaintiff to show a contract between himself and the defendant in order to establish that the defendant has assumed a position, relationship or status upon which the general law predicates a duty independent of the terms of the contract but it does not necessarily follow that his only remedy is ex contractu. If from the position, contractually assumed, a duty be raised independent of the contract an action in tort may lie.

"* * * A mere breach of contract cannot be sued on as a tort, but for tortious acts, independent of the contract, a man may be sued in tort, though one of the consequences is a breach of his contract." *Stock*

*v. City of Boston,* 149 Mass. 410, 21 N. E. 871, 14 Am. St. Rep. 430 (1889).

■ Relationships of shipper and carrier, bailor and bailee, physician and patient, and attorney and client each originate in contract, express or implied; yet for a breach of duties imposed by general law upon persons assuming such relationship an action of tort may lie. In this state an action in tort may even arise directly out of contract if based on a fraudulent promise which the promisor never had any intention of fulfilling and which he successfully employed for the purpose of deceiving the promisee. *Richer v. Burke,* 147 Or. 465, 34 P. (2d) 317 (1934); *Sharkey v. Burlingame Co.,* 131 Or. 185, 282 P. 546 (1929).

Closely analogous to the case at bar is the situation of a pledgee exercising a power of sale by reason of default by the pledgor. The relationship has its inception in contract but the pledgee has a duty at common law to act in good faith and with diligence in protecting the interests of the pledgor and for breach of that duty he may be liable in an action for damages. Restatement of the Law of Security, 142, 143, §§ 49 and 50.

■ The crucial question therefore is whether, independent of the express provisions of the contract, the Brewery Company had a common-law duty to use its best efforts to obtain as much as it reasonably could upon the sale of the property or, as stated by the trial court, to use that degree of diligence and care in selling the property that the average prudent man would use in selling his own property. The nature of the transaction of August 30th is clear. The plaintiffs were indebted to the defendant company. They executed and delivered to it deeds absolute in form. They entered into a col-

lateral agreement that the deeds were executed "to secure the party of the first part for said indebtedness". The debtors were to have thirty days to pay the debt. In the meantime the Brewery Company was not to record the deeds but merely hold them as security. If the debt was paid the deeds were to be returned; if not paid then the Brewery Company was authorized to record the deeds and sell the property at private sale. The surplus, if any, from the sale was to be paid to the debtors who were to retain possession for thirty days after which they were to surrender the same if the debt was not paid. The transaction constituted in effect a mortgage. *Thompson v. Marshall*, 21 Or. 171, 27 P. 957; *Libel v. Pierce*, 147 Or. 132, 31 P. (2nd) 1106; *Conley v. Henderson*, 158 Or. 309, 75 P. (2nd) 746.

■ Our code, 2 O. C. L. A. § 9-501, provides that a lien upon real property shall be foreclosed by a suit, and it has been held that such procedure is exclusive. *Marquam v. Ross*, 47 Or. 374 at 423, 86 P. 1; *Libel v. Pierce*, supra; *Thompson v. Marshall*, supra; *First National Bank v. Courtright*, 82 Or. 490 at 502, 158 P. 277.

■ Assuming but by no means deciding that the Brewery Company as mortgagee had a right to sell at private sale without foreclosure suit, we hold that if it did sell it would be subject to such obligations of good faith and diligence as are imposed on mortgagees with power of sale in states permitting that form of foreclosure. If, pursuant to the stipulations of the contract but contrary to the statute, the defendants sold the property at private sale, their wrong could not relieve them of the duties they would have had if the provisions

for private sale had been valid. As said in a similar case:

"* * * Neither such judgment nor the stipulation in the mortgage conferred any rightful authority upon the mortgagee to seize and sell the mortgaged property. Still such mortgagee ought not to occupy a better standing in court, after having done that which is prohibited by our statute, than if he had done the same thing, being allowed to do so by law." *Aultman & Taylor Co. v. Meade*, 121 Ky. 241, 89 S. W. 137, at 138, 123 Am. St. Rep. 193 (1905).

■ A mortgagee in the exercise of a power of sale of real property owes a duty recognized both at law and in equity to act in good-faith using all reasonable efforts to make the sale beneficial to the mortgagor by obtaining for the property the best price reasonably obtainable. 37 Am. Jur. 137 § 692; 142 § 702; 41 C. J. 968 § 1415.

In the case of *Sandler v. Silk*, 292 Mass. 493; 198 N. E. 749 (1935) the plaintiff brought an action in tort to recover damages for alleged fraudulent foreclosure of a mortgage. The court found that there was ample evidence to support the finding that the holder of the mortgage working with the other defendants pursuant to a concerted plan violated the duty resting upon him to use reasonable care and good faith in foreclosing the mortgage. The court said:

"This form of action lies to recover damages for the wrong to the plaintiff shown on the present record. * * *"

"It has become settled by repeated and unvarying decisions that a mortgagee in executing a power of sale contained in a mortgage is bound to exercise good faith and put forth reasonable diligence. Failure in these particulars will invalidate the sale even though there be literal compliance with the terms of the power.

(Citing cases) This duty and obligation as to good faith and reasonable care extends for the benefit and is available for the protection not only of the mortgagor but of those claiming in his right, including those holding junior encumbrances or liens. He is a trustee for the benefit of all persons interested." (Citing cases)

This rule was approved in *Levin v. Reliance Cooperative Bank*, 301 Mass. 101, 16 N. E. (2nd) 88 (1938). In the case of *Fenton v. Torrey*, 133 Mass. 138 (1882) the plaintiff executed a mortgage in favor of the defendant who, by virtue of a power of sale, caused the property to be sold. The plaintiff alleged misconduct by the defendant in connection with the sale in failing to properly advertise the same and in not allowing persons present at the sale a fair opportunity to bid. The court said:

"It has often been held that one who undertakes to execute a power of sale is bound to the observance of good faith, and to a careful regard for the interest of his principal. Thompson v. Heywood, 129 Mass. 401, and cases there cited. The question usually arises on a bill in equity brought to restrain or to set aside a sale; but a remedy at law is also open to a party injured by a failure to perform this duty."

In *Federal Land Bank v. Robinson*, 160 Miss. 546, 134 So. 180 (1931), it is said:

"We think it is not seriously denied that recoupment was the proper plea in this case. Neither can it be doubted that the injured mortgagor who has been damaged by a fraudulent sale for an inadequate price, without notice thereof, may either file his bill in equity to set aside the sale or sue at law for the damages sustained by him; or, if sued, he may, by way of recoupment, diminish his debt; or, if the damages sustained by him are equal to or exceed the amount of the debt, he may extinguish same. See Myers v. Estell, 47 Miss

4; Rogers v. Barnes, 169 Mass. 179, 47 N. E. 602, 38 L. R. A. 145; Burnett v. Dunn Commission & Supply Co., 180 N. C. 117, 104 S. E. 137; Dwyer v. Rohan, 99 Mo. App. 120, 73 S. W. 384; Missouri Real Estate Syndicate v. Sims, 179 Mo. 679, 78 S. W. 1006; O'Brien v. Logan, 236 Mass. 507, 128 N. E. 878."

and see 41 C. J. 968 § 1415; 41 C. J. 1035 § 1501; *Tedlock v. Torbert,* 89 Okla. 218, 215 P. 196 (1923); *Stansberry v. McDowell,* 186 S. W. 757; *Manning v. Liberty Trust Company,* 234 Mass. 544, 125 N. E. 691 (1919), 8 A. L. R. 999; *Sherwood v. Saxton,* 63 Mo. 78 (1876); *Carruthers v. Hamilton Provident and Loan Society,* 12 Manitoba 60 (1898); *Rogers v. Barnes,* 169 Mass. 179 (1896), 47 N. E. 602, 38 L. R. A. 145; *Chew v. Baker,* 133 Md. 637, 105 Atl. 756.

■ The contract between plaintiffs and the defendant brewery expressly required the defendant to "use its best efforts to obtain as much as it reasonably can for said property", but that is not all. Pursuant to the contract the defendant company received deeds as security with a purported power of sale. It thereby assumed a relationship to the plaintiffs upon which the law imposed a duty to act in good faith, using reasonable efforts to make the sale beneficial to the mortgagor by obtaining the best price reasonably obtainable. This was a duty "independent of contract" imposed by law and irrespective of similar contractual provisions. A breach of that duty was an actionable tort under the authorities cited.

■ We now approach defendants' second ditch argument. Since we have held that plaintiffs are not limited to an action ex contractu, the defendants now urge that plaintiffs' only remedy must be in equity. The cases already cited repel that contention. We ac-

cept as satisfactory for the purposes of this case the definition of a tort submitted by the defendants, as follows:

"We may accordingly define a tort as a civil wrong for which the remedy is a common law action for unliquidated damages, and which is not exclusively the breach of a contract or the breach of a trust or other merely equitable obligation(s)". Salmond's Law of Torts, 9th Ed. P. 15.

but the asserted wrong of the defendants in this case was not "exclusively the breach of a contract or the breach of a trust or other merely equitable obligation". It was a breach of legal duty. Although the deeds to the defendant brewery were absolute in form, they were, as we have said, in effect mortgages. *Sandler v. Silk, Fenton v. Torrey, Carruthers v. Hamilton Provident and Loan Society* (supra) were cases of mortgage in form as well as effect, and the right to sue in tort for the improper exercise of power of sale was upheld. *Federal Land Bank v. Robinson and Stansberry v. McDowell* (supra) involved deeds of trust issued by the debtor directly to the creditor as security for the debt. They did not, however, create technical trusts. They too in effect were mortgages. *Thompson v. Marshall* and *First National Bank v. Courtright* (supra). Our conclusion is that whether the conveyance be by mortgage by absolute deed given as security or by deed of trust given to a creditor to secure the debt of the grantor, the instrument is in effect a mortgage, and in the exercise of a purported power of sale the mortgagee has the duties which we have indicated, for the breach of which the law, as distinguished from equity, gives a remedy ex delicto.

 It must be remembered that an ordinary foreclosure of a mortgage is accomplished by proceedings in

a court of equity, in which the power of the chancellor is adequate to insure a proper sale of the security or to deny confirmation, whereas the exercise of a power of private sale is not, at the time, subjected to equitable supervision and constitutes. at best, a harsh remedy. There is a clear distinction between a trust and an ordinary mortgage. 1 Scott on Trusts, Page 68, Section 9. In fact, there is substantial authority to the effect that even a mortgagee exercising a power of sale (where the law permits that form of foreclosure) is not in any real sense a trustee for the mortgagor. See Hunter's Power of Sale under Mortgage, Chapter 2, and *Carruthers v. Hamilton Provident and Loan Society* (supra). It is true that a mortgagee exercising a power of sale is often described as a trustee for the benefit of the mortgagor and does assume a relationship which may be called fiduciary, *Bliss v. Bahr*, 161 Or. 79, 87 P. (2nd) 219 (1939); *Lindholm v. Nelson*, 125 Kan. 223, 264 P. 50 (1928), and equity has often taken jurisdiction to set aside sales when the power has been improperly exercised. Obviously where the relief sought is the avoidance of the sale, equity would be the proper forum, and where a cancellation is sought by suit, the chancellor may properly assimilate the situation to that of a trust or raise a constructive trust in the process of doing equity. However, in this action at law, seeking only damages, plaintiff need not rely upon the law of trusts. The defendant brewery owed a duty. The jury has found that it wilfully failed of performance. There is no trust res in its hands, no accounting to be had of funds received. The assessment of damages properly estimated will terminate and completely adjust the rights of the parties, and there is no occasion for resort to equity.

Defendants rely upon sections 197 and 198 of the Restatement of Trusts, to the effect that the remedies of the beneficiary against the trustee are exclusively equitable. It is clear, however, that the learned authors of the Restatement were dealing with true trusts and not with mortgages.

"A statement of the rules of law relating to the employment of a trust as a security device is not within the scope of the Restatement of this Subject. Although many of the rules applicable to trusts are applied to a deed of trust in the nature of a mortgage, to assignments for the benefit of creditors, and to other uses of the trust for purposes of security, different rules are sometimes applied." Restatement of Trusts, Page 4, Section 1.

*Marquam v. Ross* (supra) is cited by defendants as directly supporting their contention that there was no fiduciary relationship between the plaintiffs and the defendant brewery. In that case a deed absolute in form was given to the Title company, together with a collateral trust agreement. As in the case at bar the deed was held to be in the nature of a mortgage, the conveyance being subject to reconveyance if the debtor paid the debt and not being unconditional for the purposes of the trust. This being true, it was held that a mortgagee in possession was not such a trustee as would prevent him from purchasing the mortgaged property at a public sale, but this was not a case of the exercise of a power of sale, real or purported. The property was foreclosed by suit and sold by order of court. There were other provisions in the collateral agreement in the nature of an express trust, but the court held that the trust relation was terminated by the decree in the foreclosure suit. The exact reverse is true in the instant

case. In the Marquam case, the parties were held to be acting at arms' length in connection with the sale, which was pursuant to a decree of the court, whereas in the instant case the duty of the brewery, which may be described as fiduciary, arose by reason of the exercise of a purported power of sale without the intervention of a court of equity.

Reliance is also placed on the case of *Nodine v. Wright*, 37 Or. 411, 61 P. 734 (1900). In that case, the plaintiffs brought an action at law for damages for an alleged abuse of a trust in favor of creditors. Being heavily indebted to many persons, the plaintiffs conveyed all of their property to trustees who were to dispose of it "as soon as they might consider it for the best interests of the plaintiffs", and at not less than a specified price. The trustees were to pay the plaintiffs' debts, taxes, interest and costs and other expenses and return a portion of the surplus to the plaintiffs. It was alleged that the trustees fraudulently transferred the property to their own friends at an excessively low price and to their own profit. The court held that the plaintiffs' remedy was exclusively in equity. The case is not in point. An express trust had been created. The conveyance was not from debtor to creditor, but was from the debtor to a third party for the benefit of creditors. No right was reserved in the grantors to pay the various debts and have a reconveyance to them of the trust property. The conveyance was unconditional and indefeasible, as distinguished from a trust in the nature of a mortgage, which is conditional and defeasible. *Neikirk v. Boulder National Bank*, 53 Colo. 350, 127 P. 137 (1912).

"* * * A distinction has been taken between the situation where property is transferred to a trustee

to secure a debt of the transferor to a third person, where there is a mortgage in trust and the transferor has an equity of redemption; and the situation where property is transferred to a trustee to use the property or its proceeds to pay debts of the transferor where the transaction is not a security transaction and the transferor has no equity of redemption although he is entitled to enforce a resulting trust of any surplus which may remain after the payment of the debts''. Scott on Trusts, Page 71, Section 9.

Treating the transfer in the Nodine case as an express trust, the court properly held that the trust had never been closed but remained open. It was observed that "* * * it will require an accounting before the liability of the trustees, if any, can possibly be ascertained." The court quoted with approval from Perry on Trusts, as follows:

"Unless some legal debt has been created between the parties *or some engagement the nonperformance of which may be the subject of damages at law,* a court of equity is the only tribunal to which he can have recourse for redress."

It is unnecessary for us to decide upon what conditions the beneficiary of an express trust (not in the nature of a mortgage) may sue the trustee ex delicto. Upon that question the authorities are in conflict. 1 C. J. P. 1031; 1 C. J. S. P. 1128; *Sharts v. Douglas,* 94 Ind. App. 201, 163 N. E. 109 (1928); *Brys v. Pratt,* 55 Wash. 122, 104 P. 169 (1909); *Holderman v. Hood,* 70 Kan. 267, 78 P. 838 (1904); *Margulies v. Manufacturers' Trust Co.,* 266 N. Y. S. 157 (1933); Scott on Trusts, P. 1071, Sec. 198; Restatement of Trusts, P. 521, Sec. 197; *Garber v. Whittaker,* 36 Del. 272, 174 Atl. 34 (1934).

■ To the following instruction given by the trial court, exception was duly taken:

"3. I instruct you that said contract created a fiduciary, that is a trust relationship between the defendant, Star Brewery Company, and the Plaintiffs herein which imposed upon the defendant, Star Brewery Company, the duty of using that degree of diligence and care in selling this property that the average prudent man would use in selling his own property."

In substance the duty of reasonable diligence was fairly stated by the court in the foregoing instruction. The only criticism that can be made is that the duty as properly defined was improperly labeled as growing out of a trust relationship. Although, as we have said, there was no express or technical trust, there was a duty on the part of the defendants toward the plaintiffs which has been frequently described as a trust or fiduciary relationship. We do not believe that the jury could have been misled by a proper definition of the defendants' duty even if inaccurately labeled. There was no reversible error in this instruction.

■ By its third assignment, the defendants contend that the court committed reversible error in instructing the jury that defendants could not reimburse themselves for any loss incurred while they were attempting to sell the cold storage plant. No issue was made by the pleadings concerning any alleged right of the defendant brewery to charge the plaintiff with any loss it may have suffered in operating the brewery during the month of October, nor do we find in the transcript any evidence on the basis of which the jury could have charged the alleged loss of $304 against the plaintiffs. The purchaser, Caspert Cohen, reimbursed the defendant brewery for such loss, and furthermore there

was no evidence that the defendant brewery was required by agreement to operate at all or that its operation in October was competently performed or that the alleged loss was not the result of its own fault. There is no merit in this assignment. The jury was clearly instructed as to the proper measure of damages, to which instruction no objection was taken.

■■ By its fourth assignment, the defendants contend that the court committed reversible error in refusing to define ratification to the jury. The defendants made no request for such an instruction. In fact, defendants themselves requested an instruction which dealt with the subject of ratification but which also omitted any definition of that term. Furthermore this objection is not before us for review, because it appears from the transcript that portions of the court's instructions have been omitted therefrom. We quote from the transcript under the heading ''Instructions to Jury'':

''(After reading the complaint, answer and reply and *explaining the issues created thereby* the court thereupon gave the following special instructions.)
* * *''

The reason for the omission from the transcript of a portion of the instructions is made more clear by the certificate of the official reporter to the effect that one of the notebooks containing instructions to the jury was lost. No injustice will result to the defendants by reason of the fact that this assignment of error is not before us for review. The undisputed evidence shows that the defendant Gage was the president and managing head of the defendant Brewery and had full authority to act, subject only to the general control of the board of directors. The answer of the defendant Gage admits that the company ratified his actions. The

answer of the company denied the alleged ratification, but the undisputed evidence of the defendant Gage establishes first that Gage informed the corporation of the full details of the transaction and second that the corporation, having such knowledge, ratified his acts. The following excerpts from the transcript selected from several of similar tenor leave no doubt upon this issue. In the direct examination of Mr. Gage by his own counsel the following appears:

"Question: Did you at all times tell your principal, the Star Brewery, the full details of this transaction?
"Answer: Yes".

✻ ✻ ✻ ✻ ✻

"Question: As president of the board of directors what were your duties?
"Answer: Varied duties; I took care chiefly of the financial expenditures of the brewery, the managerial supervision that was required to direct the operations of the brewery.
"Question: Were you the acting head of the brewery?
"Answer: Yes as president of the brewery I was final authority under the board of directors".

 We think that the undisputed evidence establishes first that the defendant Gage was at all times acting as the authorized agent of the brewery in connection with this transaction and second that the brewery did ratify such action. In support of this assignment the defendants assert that a proper exception to an erroneous instruction is equivalent to a proper request which was refused and exception allowed. Such rule if it exists has not heretofore received the approval of this court. However, the court's instruction on ratification was not erroneous. At most, it was only a failure to

give a further definitive instruction for which there had been no request.

The jury having found that defendant Gage acted maliciously and in disregard of the rights of the plaintiff, were also authorized under the evidence to impose punitive damages against both the principal and the agent. *Pelton v. G. M. A. C.*, 139 Or. 198 at 204, 7 P. (2nd) 263 (1932); *Bingham v. Lipman*, 40 Or. 363 at 371, 67 P. 98 (1901).

Paragraph 3 of defendants' requested instruction 5 (assignment of error 5) was an erroneous statement of law. The remainder of the request was given in substance by the trial court.

Defendants' requested instruction 12 (assignment of error 6) was sufficiently covered by the court's instruction 11.

Finding no reversible error, the judgment of the trial court is affirmed.