Argued and submitted March 28, affirmed June 9, reconsideration denied
July 22, petition for review denied November 14, 1980 (289 Or 741)

CASCADE STEEL FABRICATORS, INC.,
*Appellant-Cross-Respondent,*

*v.*

CITIZENS BANK OF OREGON,
*Respondent-Cross-Appellant.*

(No. 76-6178, CA 14889)

612 P2d 332

Darst B. Atherly, Eugene, argued the cause for appellant-cross-respondent. On the briefs were George A. Burgott, and Thwing, Atherly & Butler, Eugene.

Stuart M. Brown, of Young, Horn, Cass & Scott, Eugene, argued the cause and filed briefs for respondent/cross-appellant.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges, and Howell, Judge pro tempore.

HOWELL, J. pro tempore.

**HOWELL, J.** pro tempore.

Plaintiff filed this action for damages for "the tort of bad faith" arising out of the defendant Bank's failure to extend additional credit to plaintiff and for its foreclosure on plaintiff's collateral for loans from the bank.[1] Defendant's motion for a judgment of involuntary nonsuit was allowed and plaintiff appeals. We affirm.

Plaintiff is engaged in the manufacturing and installation of machinery made of steel. Since 1963 plaintiff has been a customer of defendant bank and had established a line of credit and obtained loans from the bank. In 1975 plaintiff had sustained substantial losses on two jobs and needed additional capital to meet its accounts payable. On May 1, 1975, two of plaintiff's representatives met with the bank officer assigned to plaintiff's account. At that time plaintiff had a substantial number of outstanding loans with defendant, at least one of which was delinquent. At the meeting plaintiff requested renegotiation of some of the loans and sought $100,000 to $300,000 additional refinancing. Plaintiff's assets at that time exceeded its liabilities. The bank representative told plaintiff there "should be no problem," that he "needed a day or two to work on it," and that he "would have to talk to his superiors." The parties had a similar conversation on the phone a few days later. On May 6, 1975, the bank closed plaintiff down and assumed control of the inventory, equipment and other collateral securing defendant's loans to plaintiff. Plaintiff concedes that defendant bank was entitled to take that action.

Plaintiff characterizes its cause of action against the bank as a tort action for bad faith for "demanding payment without prior notice on certain loans after

---

[1] Plaintiff also alleged fraud and conversion against defendant bank, but those allegations were dropped before trial.

repeatedly assuring plaintiff that further financing would be forthcoming, and further in foreclosing upon the collateral securing those loans."

Plaintiff cites two cases to support its tort theory of bad faith: *Harper v. Interstate Brewery Co.,* 168 Or 26, 120 P2d 757 (1942), and *Skeels v. Universal C.I.T. Credit Corporation,* 222 F Supp 696 (WD Penn), *judgment vacated on other grounds* 335 F2d 846 (3d Cir 1964). In *Harper* the Supreme Court held that a deed given to secure an indebtedness was, in effect, a mortgage, and that a right given to the mortgagee to sell the property at a private sale required the mortgagee to use good faith to secure the best possible price on the sale. The court's holding was specifically directed to the manner in which the mortgagee had exercised its power of sale, which bears no relationship to the facts and the issue in the present case.

In *Skeels* the plaintiff, an automobile dealer, brought an action against the defendant, a credit and financing agency, for failure to provide additional financing.[2] A representative of defendant, knowing that plaintiff's request for an additional $15,000 loan had been denied by the home office, repeatedly assured plaintiff that the loan was forthcoming and that plaintiff could act accordingly, including paying its accounts payable. Thereafter, plaintiff became delinquent in its obligation to the defendant financing agency and the agency took possession of all of plaintiff's inventory. The decision of the Court of Appeals described defendant's actions in assuring plaintiff that he would receive the loan when it knew the loan had been rejected as a "willful wrong." 335 F2d at 849.

---

[2] It is difficult to determine from the decision in the District Court (227 F Supp 696) the exact nature of the plaintiff's cause of action. The court made reference to an "unlawful conversion," "putting plaintiff out of business," and that defendant's actions "lulled plaintiff into a sense of security."

Unlike *Skeels,* in the case at bar the plaintiff was not falsely advised that the additional financing was forthcoming and encouraged to act on that advice. Optimism may have caused plaintiff to believe it was going to receive additional financing, but that was not what it was told by the bank. On the contrary, the bank representative told plaintiff he did not see any problem but that he would have to consult with his superiors, which would take a few days. The "willful wrong" that existed in *Skeels* is not present here and no tort was committed against plaintiff. If we accept plaintiff's position, then a bank could be liable to anyone merely by indicating that a loan appeared to be favorable, saying that time was needed to consider it, and then refusing the additional financing and foreclosing on its collateral.

The defendant has filed a cross-appeal contending that the trial court erred in refusing to award attorney fees. The defendant contends that it is the prevailing party and that certain of the credit agreements executed by the parties during their relationship entitle defendant to recover attorney fees. An inventory sale agreement and certain security agreements executed by the parties provided for attorney fees to the prevailing party in any suit or action and for attorney fees to be paid by the debtor in the security agreements.[3] These documents were attached as exhibits in defendant's answer to the plaintiff's fifth amended complaint. The defendant contends that plaintiff's action is an action on the contracts which defendant alleged in its answer. Plaintiff argues that its cause of action is in tort for failure to act in good faith toward plaintiff. We agree with plaintiff that its attempted cause of action sounds in tort and that plaintiff was not

---

[3] "In the event suit or action is brought by any party to enforce any portion of this agreement, the prevailing party or parties shall recover from the other party or parties its reasonable attorney fees in the initial proceeding and in any appeal or subsequent proceeding." (Inventory Sale Agreement, Exhibit A)

seeking to enforce any provision of the inventory sale agreement or the security agreement on the various loans by the bank to plaintiff. As the attorney fees are not included in the issues litigated in this case, defendant is not entitled to recover. *Cf. Bliss v. Anderson,* 36 Or App 559, 585 P2d 29 (1978), *rev. denied* 285 Or 73 (1979).

Affirmed.

---

"The debtor agrees to pay the secured party's reasonable attorney's fees and other expenses incurred by the latter in retaking, holding, preparing for sale and realizing on said collateral. Should suit or action be instituted on this contract, on the said note or to replevy said collateral, or any part thereof, debtor agrees to pay (1) plaintiff's reasonable attorney's fees to be fixed by the trial court and (2) on appeal, if any, similar fees in the appellate court to be fixed by the appellate court, and all said sums shall be included and the obligations secured hereby." (Security Agreements, Exhibits C through F)